[S. F. No. 8739. In Bank.—January 22, 1920.]

SUSAN D. BOA, Respondent, v. SAN FRANCISCO-OAKLAND TERMINAL RAILWAYS (a Corporation), Appellant.

[1] NEGLIGENCE — INJURIES TO STREET-CAR PASSENGER — CAUSE OF ACCIDENT—SUFFICIENCY OF EVIDENCE.—In this action for damages for personal injuries to a street-car passenger from being struck by the overhang of the car after she had alighted therefrom for the purpose of transferring to another car and while the car was rounding a curve, it is held the evidence supports the finding of the jury as to the cause of the accident.

[2] ID.—ALIGHTING OF PASSENGER FROM STREET-CAR—INJURY BEFORE REACHING PLACE OF SAFETY—RELATIONSHIP OF CARRIER AND PASSENGER.—Where a passenger on a street-car had alighted for the

---

2. Status as street-car passenger of person transferring from one car to another, notes, 104 Am. St. Rep. 587; 48 L. R. A. (N. S.) 683; 6 A. L. R. 1301.

purpose of transferring to another car, but before she had had a reasonable opportunity to reach a place of safety she was struck by the overhang of the car from which she had alighted while the car was rounding a curve, the relationship of carrier and passenger had not terminated.

[3] Id.—Contributory Negligence—Instructions.—Instructions which defined contributory negligence as consisting of some act on the part of the plaintiff which was a proximate cause of the injury, and such an act as a person of ordinary care and prudence would not have done, objected to because contributory negligence may arise from an omission as well as an act, were cured of their defects by the giving of other instructions defining contributory negligence as an act or omission.

[4] Id.—Knowledge of Surroundings — Instruction.—An instruction that the jury might take into consideration all the surrounding circumstances, including the age of the plaintiff, her knowledge, and her ignorance of her surroundings, was not prejudicial, as singling out or bringing into prominence any isolated facts, where the instructions were read as a whole.

[5] Id.—Submission to Operation—Instruction.—An instruction that one injured by the negligence of another is not required to undergo a serious or critical operation which might be attended by some risks of failure, if such person exercises reasonable diligence in caring for her injuries and reasonable means to prevent aggravation of them, and to effect her speedy and complete recovery, was not error, where there was conflicting medical testimony as to whether the operation, if submitted to, would have effected a permanent cure.

[6] Id.—Selection of Physician and Surgeon — Instruction.—An instruction that if the plaintiff was injured through the negligence of defendant and that she used ordinary care in the selection of a physician and surgeon, it would be no defense to show that the physician and surgeon thus selected was unskillful or failed to give her the best or proper treatment, providing she complied with the directions and submitted to the treatment prescribed, contained a correct statement of the law.

[7] Id.—Verdict not Excessive.—In an action for personal injuries, it cannot be said that the trial court abused its discretion in determining that a verdict of eight thousand dollars was not excessive, where the plaintiff was seventy-two years of age, had been living with her daughter prior to the accident, attending to the housework, the daughter having been engaged in steady employment elsewhere, and by reason of the accident the plaintiff suffered a fracture of the neck of the femur, thereby be-

3. Contributory negligence of persons struck by street-car while waiting for a car, note, 22 L. R. A. (N. S.) 228.

coming an invalid, and unable to care for herself or to move without assistance, or to perform any useful service, and requiring constant attendance.

[8] ID.—PROOF OF CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—An instruction that contributory negligence is an affirmative defense which must be established to the "satisfaction" of the jury by a preponderance of the evidence, and that if in the minds of the jury the evidence is evenly balanced, the defense fails in such particular, cannot be said to be prejudicially misleading as requiring a higher degree of proof than the law exacts, when considered in connection with other instructions correctly defining the burden of proof.

[9] ID.—EVIDENCE—IMPROPER MEDICAL TREATMENT.—In an action for personal injuries, evidence of improper medical treatment was not admissible where there was no evidence showing that plaintiff had any information of the physician's lack of skill prior to the employment, or that she continued with him after being informed of any lack of skill or failure to give proper treatment.

[10] ID.—DAMAGES—MENTAL SUFFERING—REASONABLE APPREHENSION OF FUTURE DISABILITY—EVIDENCE.—In an action for personal injuries, the physical and mental condition of plaintiff resulting from the accident is material, and mental suffering occasioned by any reasonable apprehension of future disability or deformity resulting naturally and proximately from plaintiff's injury is a proper element to be considered by the jury in assessing damages.

[11] ID.—BELIEF OF PLAINTIFF—PERMANENT INJURIES.—In such an action, the plaintiff has the right to testify as to her belief at the time of the trial that she would be a permanent invalid.

[12] ID.—PERMANENCY OF INJURIES—STATEMENTS OF PHYSICIANS NOT REGULARLY RETAINED.—In such an action, it was error without prejudice to permit the plaintiff, over objection, to state what certain physicians not regularly retained by her had informed her regarding the permanency of her injuries, where the jury was instructed to consider the objectionable statements solely for the purpose of determining how plaintiff felt about her condition at the time of the trial and its effect upon her mind.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Whittle, W. H. Smith, Louis W. Bennett, Morrison, Dunne & Brobeck and Chapman & Trefethen for Appellant.

10. Apprehension of injury to health as basis of recovery for mental anguish, note, 20 L. R. A. (N. S.) 458.

J. E. White, John J. Long and Sven Svenson for Respondent.

LENNON, J.—The facts upon which this appeal is based are stated in the opinion of the district court of appeal for the first appellate district, division two, written by Mr. Justice Haven (28 Cal. App. Dec. 1005). We adopt that opinion, in part, as follows:

"Defendant appeals from a judgment, after verdict, in an action for damages resulting from personal injuries. The plaintiff and her daughter were passengers on a street railway car owned and operated by the defendant. They alighted from this car at the corner of University Avenue and Oxford Street, in the city of Berkeley, for the purpose of transferring to another car of the defendant, and were instructed by the conductor in charge of the car from which they alighted to proceed across the street to the opposite corner and there await the car to which they were to transfer. After they had alighted and were upon the street, the car which they had left proceeded to turn around the corner from Oxford Street into University Avenue. In making this turn the overhang of the car struck the plaintiff, threw her to the ground, and inflicted serious personal injuries.

"The appellant contends that the evidence proves without conflict that the plaintiff was herself guilty of negligence in not having proceeded, while the car was stationary, a sufficient distance from the track to have avoided being struck by the overhang as it rounded the curve; and, further, that if her negligence did not cause the injuries, it at least contributed thereto. As is usual in such cases, the statements of the several witnesses differed as to the time which elapsed after the plaintiff had reached the street before the car proceeded on its way, and also as to the distance which had been traversed by the plaintiff prior to the accident, and the exact point at which the accident occurred. The verdict of the jury must be considered as being based upon implied findings that the accident was caused by the negligence of the defendant and not by any negligence, contributory or otherwise, of the plaintiff. These implied findings and this verdict cannot be disturbed by this court if there was any evidence to support them. Plaintiff stated that she thought she had gone a very short distance when the car came upon

her; that she had taken just a few steps—possibly three or four, but not more—but that she did not count the steps. She located upon a diagram used at the trial a point which in her best judgment was the point where the car collided with her.   This point appears from the diagram to be about forty feet from the point where she alighted from the car. A witness to the accident, who stated that he was driving his wagon at a point about 150 feet to the rear of the car when the plaintiff stepped therefrom, testified that, when the car started, the plaintiff could not have gotten away' from the car at all; that she was just about taking her hand off the post ready to make a step, or had made a step; that she had not made two steps when the car struck her. . . .

[1]   This testimony is sufficient to support the finding of the jury as to the cause of the accident.   It was for the jury to determine the weight of the evidence in connection with the conflicting statements of the witnesses.

"Appellant further complains of errors of law occurring at the trial, and excepted to by the defendant, with regard to the giving and refusing of certain instructions, and to the reception and exclusion of certain evidence. . . . [Certain] instructions objected to by appellant have reference to the degree of care which defendant owed to the plaintiff at the time of the accident, as dependent upon whether or not her relation to the defendant as a passenger had ceased at that time.   These instructions are as follows:

"(Instruction No. 17.)   'I instruct you that the law of this state requires a carrier of passengers for reward to use the utmost care and diligence for their safe carriage, and if you find from the evidence submitted in this case that the plaintiff was a passenger upon one of the defendant's cars, and that before she had a reasonable opportunity to reach a place of safety upon alighting from said car she was struck by the car from which she had alighted, then the burden is cast upon the defendant to prove that the injury was occasioned by an inevitable casualty, or some other cause which human care and foresight could not prevent, or by the contributory negligence of the plaintiff.'

"(Instruction No. 18.)   'The relation of passenger and carrier continues to exist while the passenger is expeditiously alighting from the car; and the carrier is bound to exercise the same high degree of care in affording a passenger a

reasonable opportunity to alight in safety as in carrying her safely; and if you find from the evidence submitted to you in this case that while the plaintiff was alighting from the car of the defendant company the car upon which she had been riding was started by the defendant before she had a reasonable opportunity ,to reach a place of safety and by reason thereof the injuries complained of were inflicted, then your verdict should be for the plaintiff.'

"(Instruction No. 19.) 'If you find from the evidence that the plaintiff became a passenger on one of the defendant's cars; that she paid her fare and received a transfer entitling her to continue her journey on another of the defendant's cars from the transfer point; that she alighted at the point ·indicated by the conductor of the car upon which she was riding; and that the car from which she had alighted was started before she had a reasonable opportunity to reach a place of safety, using in that behalf the care which an ordinarily prudent person would have used under the circumstances, then your verdict should be for the plaintiff.'

"It is claimed by appellant that the relation of carrier and passenger ceased as soon as the plaintiff alighted from the car and stood upon the street. In support of that contention reliance is placed chiefly upon the cases of *Creamer* v. *West End Street Ry. Co.*, 156 Mass. 320, [32 Am. St. Rep. 456, 16 L. R. A. 490, 31 N. E. 391], and *Chattanooga Electric Ry.* v. *Boddy,* 105 Tenn. 666, [51 L. R. A. 885, 58 S. W. 646]. These cases announce the general rule that: 'When a passenger steps from the car upon the street, he becomes a traveler upon the highway, and terminates his relations and rights as a passenger, and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk.' In each of the above-cited cases the plaintiff was injured, not by the car from which he had alighted, but by another car of the defendant. Respondent relies upon the case of *Cody* v. *Market Street Ry. Co.*, 148 Cal. 90, [82 Pac. 666], in which an instruction very similar to the one now under consideration was approved by the supreme court. In that case the plaintiff was injured while alighting from the defendant's car. It is claimed by appellant that that fact distinguishes the Cody case from the case at bar; that the status

of a person while in the act of getting down from a street-car is different from that of a person who has fully gotten down from the car and upon the street and is walking along the pavement.   The rules contended for by the respective parties upon the question now under consideration are both of them well established within their proper limitations.   The question for determination here is, which rule applies under the facts of this case.   The reason of the rule contended for by appellant is well stated in the case of *Creamer* v. *West End Street Ry. Co., supra*, particularly relied upon by appellant, as follows: 'The street is in no sense a passenger station, for the safety of which a street railway company is responsible. . . . When a common carrier has the exclusive occupation of its tracks and stations, and can arrange and manage them as it sees fit, it may be properly held that persons intending to take passage upon or leave a train have the relation and rights of passengers in leaving or approaching the cars at a station.' (Citing cases.) 'But one who steps from a street railway car to the street is not upon the premises of the railway company, but upon a public place, where he has the same rights with every other occupier, and over which the company has no control.   His rights are those of a traveler upon the highway, and not of a passenger.' As appears from the foregoing quotation, the reason that the relation of carrier and passenger does not continue after the passenger has stepped upon the street is that the company has no control over a public highway.   If an accident happens to a person who has been a passenger, after he has alighted upon a street, it is clear that the railway company does not then sustain to him the relation of a carrier; but, on the other hand, the relation does continue, not only while the passenger is upon the car, but while he is in the act of alighting therefrom and until he has safely left the instrumentality by which he has been transported.   The fact that his feet may be upon the street instead of upon the step of the car can make no difference in the application of the rule. The duty of the railway company to him as a passenger continues until he has had a reasonable opportunity of leaving the car; and if, before that opportunity is afforded him, he is injured by the very car upon which he has traveled, it cannot be said that the responsibility to him as a passenger has terminated.   In the Cody case the plaintiff when injured

had one foot upon the ground and the other on the bottom step of the car. In this case the plaintiff had two feet upon the street and possibly had taken a few steps from the car. The principle upon which liability was declared in the Cody case is that responsibility continues until the passenger has had a reasonable opportunity of getting away from the car without injury. **[2]** That principle applies in this case with the same force that it did in the Cody case. Appellant relies upon the case of *Niles* v. *Boston Elevated Ry. Co.,* 225 Mass. 570, [114 N. E. 730], as being determinative in its favor of the question here under discussion. The facts of that case are in most respects similar to those in the instant case. It appears, however, that the plaintiff . . . had been afforded a reasonable opportunity of escaping the danger of the turning car. The court said: 'The plaintiff when injured, was not on the defendant's premises, nor at a station or platform in use for the purpose of transferring passengers and within the control of the carrier; neither was she under its direction and within its care. She was upon a public highway, where she was exposed to dangers not caused by the defendant. In passing from one car to the other she could go on either side of the car, she could choose her own way, and her movements were entirely under her own guidance. While so walking on a public highway and in transferring from one car to the other, as a matter of law, she was not a passenger.'

"In the case at bar the question which was submitted to the jury was whether or not the defendant allowed plaintiff a reasonable opportunity to leave its car in safety and thus to pass beyond its care. The fact that this question seems not to have been in controversy in the Massachusetts case destroys its authority here.

"The applicability of the rule announced by the Cody case, and not that contended for by appellant, to the facts of the instant case is illustrated by two cases in Connecticut cited by the opposing parties to this case. In *White* v. *Connecticut Co.,* 88 Conn. 614, [L. R. A. 1915C, 609, 92 Atl. 411], the facts were very similar to those in the instant case, and it was held that: 'A passenger alighting from a car after it has stopped at a regular stopping place is entitled to have a reasonable opportunity after leaving the car to get beyond danger from its movements and operation.' In the case of

*Powers* v. *Connecticut Co.*, 82 Conn. 665, [26 L. R. A. (N. S.) 405, 74 Atl. 931], it was held that the relation of carrier and passenger had ceased prior to the accident when the passenger, attempting to cross the track in the rear of the car, brushed against the fender and caught her dress so that she fell. In the latter case, the accident was caused by the plaintiff's own act in using the street. In the former case, the accident was caused by the negligent use by the railway company of its own instrumentalities. We are satisfied that, under the facts as stated in the instructions, the relation of carrier and passenger had not terminated at the time the plaintiff in this case received her injuries, and for that reason the instructions complained of were not erroneous.

"Appellant further complains of instructions Nos. 21 and 22, which define contributory negligence as consisting of some act on the part of the plaintiff which was a proximate cause of the injury, and such an act as a person of ordinary prudence and care would not have done. The objection to these instructions is that contributory negligence may arise from an omission as well as from an act, and that the failure to include the word 'omission' in the instruction was prejudicial error. The above instructions were given at the request of plaintiff. It appears that other instructions were given at the request of the defendant in which contributory negligence was defined as an act or omission on the part of the plaintiff. [3] These latter instructions cured any defect there may have been in the instructions on this subject given at the request of the plaintiff. The further objection made to instruction No. 21 that it was error to advise the jury that they might take into consideration all the surrounding circumstances, including the age of the plaintiff, her knowledge and her ignorance of her surroundings, etc., is without merit. [4] Reading the instructions as a whole, the instruction does not prejudicially single out or bring into prominence any isolated facts, as claimed by appellant.

"Objection is also made to instruction No. 23, which reads as follows: 'You must determine from the evidence introduced in this case the nature and extent of the injuries suffered by the plaintiff, and, in determining whether or not such injuries are permanent in character, the court instructs you the law does not require one injured by the negligence of another to undergo a serious or critical operation which might

be attended by some risks of failure, if such person exercised reasonable diligence in caring for her injuries and reasonable means to prevent aggravation of them, and to effect her speedy and complete recovery; and a refusal to undergo such an operation cannot be considered in mitigation of damages, even though under the evidence it might lessen the effects of the injury.' The argument is that the medical evidence introduced at the trial proved that the operation referred to in this instruction, if submitted to by the plaintiff, would have effected a permanent cure. [5] It appears, however, that there was conflicting medical testimony upon this point, and, under such circumstances, the giving of this instruction cannot be said to have been erroneous.

"Instruction No. 24 was as follows: 'If you find from the evidence that the plaintiff was injured through the negligence of the defendant, that she used ordinary care in the selection of a physician and surgeon for the purpose of treating her said injuries, it will be no defense to show that the physician or surgeon thus selected by her was unskillful or failed to give her the best or proper treatment, providing she complied with the directions and submitted to the treatment prescribed by such physician and surgeon.' This instruction is claimed to have been erroneous, and in this connection it is contended by appellant that the employment of an unskillful physician or surgeon, or failure to obtain proper medical attention, is negligence on the part of the plaintiff which should have prevented her recovery herein. [6] In our opinion, the above instruction contains a correct statement of the law as established by the following authorities: *Baker* v. *Borello,* 136 Cal. 160, 165, [68 Pac. 591]; *Reed* v. *City of Detroit,* 108 Mich. 224, [65 N. W. 967]; *Pullman Palace Car Co.* v. *Bluhm,* 109 Ill. 20, [50 Am. Rep. 601]; *Chicago City Ry. Co.* v. *Saxby,* 213 Ill. 274, [104 Am. St. Rep. 218, 68 L. R. A. 164, 72 N. E. 755], and other cases cited in a note in 48 L. R. A. (N. S.) 116.

"Appellant further contends that the court erred in refusing to give sundry instructions requested by the defendant. We have examined the various proposed instructions, as set forth in the transcript, and are satisfied that the court did not err in its ruling upon any of them. In some cases the matters had been covered by other instructions, and other pro-

posed instructions are based upon the defendant's theory of the law of the case, which we deem to be erroneous. . . .

"It is next claimed . . . that the damages were so excessive as to appear to have been given under the influence of passion or prejudice, and that a new trial should have been granted upon that ground. This is a matter which is very largely in the discretion of the trial court. The plaintiff was seventy-two years of age; she had been living with her daughter prior to the accident, attending to the housework, the daughter having been engaged in steady employment elsewhere, and the two of them maintaining a home in reasonable comfort. By reason of the accident, the plaintiff suffered a fracture of the neck of the femur, has thereby been made an invalid, and probably will so remain for the balance of her life. She is unable to care for herself or to move without assistance, or to perform any useful service, and requires constant attendance. [7] Under these circumstances, we cannot say that the trial court abused its discretion in determining that a verdict of eight thousand dollars was not excessive."

This brings us now to a consideration of instruction No. 20, which was given upon the court's own motion and was in effect the modification of an instruction requested by the plaintiff. The question of the correctness and effect of this instruction presents one of the strongest points urged for a reversal. The instruction reads as follows: "The defense of contributory negligence on the part of the plaintiff is an affirmative defense, and unless it appear from the evidence on the part of the plaintiff, must be established by the defendant to your satisfaction by a preponderance of the evidence, and if in your minds the evidence is evenly balanced, the defense fails in that particular." The portion of this instruction objected to by appellant is the phrase "to your satisfaction," which, it is contended, made the instruction require a higher degree of proof than the law exacts. In commenting upon a similar instruction the appellate court of Indiana said: "The form of the expression used in this instruction is not to be commended, and has been expressly condemned by the supreme court of Illinois, *Mitchell* v. *Hindman,* 150 Ill. 538, [37 N. E. 916]. In the case just cited it appeared that an instruction which stated that plaintiff was 'bound to prove to the satisfaction of the jury by

a clear preponderance of the evidence,' etc., had been requested and refused by the trial court. It was held on appeal that the instruction was erroneous and that it was properly refused. The language used in the instruction under consideration is not identical with that condemned in the Illinois case to which we have referred, but it was sufficiently objectionable to have justified the trial court in refusing the instruction. An instruction may contain such an inaccurate statement of the law as would warrant the trial court in refusing to give it, and still the objection may not be so serious as to warrant a reversal of a judgment on that account. In this case the trial court could have very properly refused to give the instruction in question, and such a ruling would have been commendable, but, having given the instruction, this court is now required to determine whether the language employed, when considered in connection with the other instructions given, was such as would probably mislead the jury to the prejudice of appellant. This court has repeatedly decided that an instruction that in substance informs the jury that a party having the burden of proof as to a certain fact or issue must establish it to the satisfaction of the jury by a fair preponderance of the evidence is not reversible error, where the other instructions in the case clearly define what is meant by a preponderance of the evidence and distinctly advise them that a preponderance of the evidence will be sufficient to justify a finding in favor of the party having the burden. In such cases it is held that the words, 'to the satisfaction of the jury,' are equivalent to 'find' or 'believe.' *Terre Haute etc. Co.* v. *Payne,* 45 Ind. App. 132, [89 N. E. 413]; *Baltimore etc. R. Co.* v. *Walker,* 41 Ind. App. 588, [84 N. E. 730]; *Sams Automatic Car Co.* v. *League,* 25 Colo. 129, [54 Pac. 642]; *Callam* v. *Hanson,* 86 Iowa, 420, [53 N. W. 282]; *Stewart* v. *Outhwaite,* 141 Mo. 562, [44 S. W. 326]." (*Sherman* v. *Indianapolis Traction Co.,* 48 Ind. App. 623, 625, [96 N. E. 473, 475].) It may well happen in some cases that an instruction in the form here given would necessarily be considered prejudicially misleading. This is especially apt to be true of an instruction regarding the burden of proving the defense of insanity in a criminal case where the other instructions concerning burden of proof are of course framed to impress upon the jury that guilt must be proved to a moral certainty and

beyond a reasonable doubt.  (*People* v. *Miller*, 171 Cal. 649, [154 Pac. 468] ; *People* v. *Preciado*, 31 Cal. App. 519, [160 Pac. 1090].)  [8]  We have carefully considered the instructions given in this case in so far as they bear upon the question of the burden of proof, and we are of the opinion that the language employed in the instruction under consideration was not such as would be likely to mislead the jury to the prejudice of appellant.

Error is also claimed in the ruling of the court sustaining plaintiff's objections to various questions propounded to a medical witness, the purpose of which was to show that the plaintiff had not received proper treatment.  Improper treatment, if proved, would be no defense if ordinary care had been used by plaintiff in choosing a doctor.  The evidence excluded should, therefore, have been received only in event there was evidence in the case from which the jury might reasonably have found that the plaintiff was negligent in her choice of a physician.  The evidence in this behalf is to the effect that the accident occurred at about 7 o'clock in the evening in a city wherein plaintiff and her daughter were strangers.  They had but one friend in this city, a lady who had been a nurse and was at the time the house mother for a club of girls.  Plaintiff's daughter asked this lady if she knew anything about the physician who was engaged to treat plaintiff, and the lady said, "Yes, he has doctored in my home, and some of those girls have been sick and we have had him.  I think he is all right."  We have discovered no evidence tending to show that any information of this physician's lack of skill was brought to the knowledge of plaintiff prior to the employment or that she continued with him after being informed of any lack of skill or failure to give proper treatment.  [9]  We are, therefore, of the opinion that the defendant failed to lay a sufficient foundation for the reception of evidence of improper treatment and that the objections to this evidence were properly sustained.

A rehearing of this cause, after decision by the court in Bank reversing the judgment, was granted solely for the purpose of reconsidering the single point upon which the judgment was ordered reversed, namely, the prejudicial nature of the admission in evidence of statements to the plaintiff by certain physicians as to the possibility of the permanency of the plaintiff's injuries.  Upon that point, in the light of

the petition for a rehearing and a further perusal of the record, we now have this to say:

[10] Unquestionably the physical and mental condition of plaintiff resulting from the accident was material, and mental suffering occasioned by any reasonable apprehension of future disability or deformity resulting naturally and proximately from her injury was a proper element to be considered by the jury in assessing the damages. (Sedgwick on Damages, 9th ed., sec. 44, and cases cited.) The disability apprehended was one arising from the blow occasioned by defendant's car and cannot be considered in any sense remote. [11] It follows that plaintiff had a right to testify as to her belief at the time of the trial that she would be a permanent invalid. It is insisted, however, that the court erred in allowing plaintiff, as it did, to state over objection that various physicians with whom she had talked concerning her injury had informed her that "in all possibility" she would never recover the use of her limb. Even if it be conceded that the advice of the physicians regularly retained in the case is a natural result of an injury to the person, plaintiff failed to show that the physicians expressing the opinion in question had been regularly retained in a professional capacity. The statements, therefore, can at most be considered as purely casual and not connected with defendant's tortious act by an unbroken chain of causation. If, therefore, as we thought upon our original consideration of this case, plaintiff's mental suffering is to be considered as occasioned by these statements which bore no legal relation to the injury, the admission of the testimony was not only error but prejudicial error as well. [12] While we are still of the opinion that the admission of the testimony was erroneous, we are now satisfied that the error was not prejudicial. The record shows that the jury was instructed to consider the objectionable statements solely for the purpose of determining how plaintiff felt about her condition at the time of the trial and its effect upon her mind. If, therefore, independent circumstances naturally and proximately resulting from plaintiff's injury were made to appear at the trial which, standing alone and regardless of the opinion of the physicians, were sufficient to compel the conclusion in the minds of the jury that the plaintiff must have been possessed of a present fear of permanent injury, it cannot be said that

the admission of the objectionable testimony resulted in a miscarriage of justice. It did in fact appear that for two months immediately after the accident plaintiff underwent treatment in a sanitarium, making no recovery at that time. It further appeared that subsequent treatment under the supervision of other physicians was equally unsuccessful, and that a year after the accident the fractured bone had not yet healed—plaintiff being at that time well over seventy years of age. It also appeared that at the trial of the case the physicians testified in the presence and hearing of the plaintiff that there was no chance of mending the bone save possibly after a long and tedious course of treatment. Furthermore, the plaintiff appeared in person in the presence of the jury, unable to walk unassisted, with her limb hanging helpless. These circumstances, we take it, were sufficient in and of themselves to have impressed the jury with the fact that the plaintiff must have been irresistibly impelled to believe that she was, and would be, permanently crippled. Consequently the objectionable statements could not have been considered the controlling, or even a materially contributing, cause of the belief expressed by the plaintiff at the time of the trial that she would never recover the use of her limb. Since it was only in that connection that the jury was allowed to consider the statements, it follows that the admission of the testimony objected to and complained of, while error, was harmless error.

The judgment is affirmed.

Lawlor, J., Olney, J., Wilbur, J., Angellotti, C. J., Shaw, J., and Kerrigan, J., *pro tem.*, concurred.

Rehearing denied.

All the Justices concurred.