[Civ. No. 2061. Third Appellate District.—February 7, 1920.]

In the Matter of the Estate of LUCIEN E. GUILBERT, Deceased; AUGUST LUCIEN GUILBERT, Appellant, v. KATHERINE KOESTER et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—WILL CONTEST—INACCURATE INSTRUCTION ON PREPONDERANCE OF EVIDENCE — ERROR CURED BY OTHER INSTRUCTIONS.—In a contest of a will based on the alleged unsoundness of mind of the testator, while an instruction that "the preponderance of evidence in a case like this is not determinable by the number of witnesses introduced to support the affirmative of the issue, but that testimony which produces conviction in the unprejudiced minds of the jurors represents the preponderance of proof, regardless of the number of witnesses from whom it proceeds," contains an inaccurate statement of the rule as to "preponderance of evidence," such inaccuracy will not constitute reversible error where it is virtually cured and is rendered innocuous by a consideration of the entire charge.

[2] ID.—SOUNDNESS OF MIND OF TESTATOR—OBSCURE INSTRUCTION NOT PREJUDICIAL.—In a contest of a will based on the alleged unsoundness of mind of the testator, an instruction that "What we mean by soundness in this connection is not that the mind should be in its full vigor and power but that its faculties, its machinery, should be in working order so to speak, with an active power to collect and retain the elements of the business to be performed for a sufficient time to perceive their obvious relation to each other," while somewhat obscure, will not create any prejudicial impression where in another part of the charge the jury is in-

structed that to be of sound and disposing mind the deceased "must have understood what he was doing."

[3] ID. — ERRONEOUS INSTRUCTION — EVIDENCE—ABSENCE OF PREJUDI-CIAL ERROR.—In a contest of a will based on the alleged unsoundness of mind of the testator, the giving of an erroneous instruction on the question of soundness of mind will not constitute reversible error where the proof of sanity of the testator, in the legal sense, is so thorough and overwhelming as to make it almost inconceivable that there was any miscarriage of justice.

[4] ID.—MEDICAL TEST OF SANITY.—Anything short of a normal and · healthy mind free from any defective co-ordination arising from disease or decay, in a medical sense, may constitute insanity or unsoundness of mind, but the law does not demand such perfection to give capacity to manage one's affairs and make valid disposition of property.

[5] ID.—LEGAL TEST OF SANITY.—The insanity which will render a will invalid is general mental incompetency, or some narrower form under which the testator is the victim of some hallucination or delusion, and in the latter instance the act to be avoided must have been produced in whole or in part by said delusion.

APPEAL from a judgment and order of the Superior Court of Siskiyou County admitting a will to probate. Affirmed.

The facts are stated ·in the opinion of the court.

Luttrell & Ley and James D. Fairchild for Appellant.

Taylor & Tebbe and Herbert R. Raynes for Respondents.

BURNETT, J.—This was a contest of the will of Lucien E. Guilbert, deceased, brought by his nephew and devisee under his will. The sole ground of contest was that at the time of the making of his will said deceased was of unsound mind and not capable of making a testamentary disposition of his property. The issue was properly framed by the pleadings and was submitted to the jury in the form of this question: "Was Lucien E. Guilbert, on January 16, 1919, at the time he executed the document claimed to be the last will and testament of sound mind?" The jury answered the question in the affirmative, and thereupon findings of fact and conclusions of law were made and filed by the judge of the superior court and said will was admitted to probate and respondents were appointed executrices thereof. The appeal is from said judgment and order admitting said will to

probate. In the opening brief of appellant several reasons are urged for a reversal of the judgment, but in his closing brief he seems to have abandoned all these points and, for the first time, urges that the court committed prejudicial error in giving certain instructions to the jury. As this was a new point, advanced for the first time in the closing brief for appellant, respondents were permitted to file a brief in reply thereto. Under the circumstances, we take it for granted that this matter of the instructions is the only consideration which appellant considers as possessing merit, and we, therefore, devote our attention to it, stating, however, that the other points urged in the opening brief are clearly and satisfactorily met and answered in the reply brief of respondents. [1] One instruction which appellant assails is as follows: "The burden of proof is upon the plaintiff, August Lucien Guilbert, to establish by a preponderance of the evidence all the allegations of the opposition denied by the petitioners; the burden of proof lies on the party who would be defeated if no evidence were given on either side, and if after a consideration of all the evidence in the case you should find the evidence upon any question is equally balanced you should answer such question against the party who has the burden of such issue, for in such a case there would be no preponderance of the evidence in favor of such proposition. The preponderance of evidence in a case like this is not determinable by the number of witnesses introduced to support the affirmative of the issue, *but that testimony which produces conviction in the unprejudiced minds of the jurors represents the preponderance of proof,* regardless of the number of witnesses from whom it proceeds." It is fair to state that appellant does not challenge the accuracy of the first part of the above instruction, but his criticism is directed to that portion which we have italicized. Undoubtedly this was not an accurate or correct definition of the preponderance of evidence which the law contemplates. The one having the burden of proof is not required, in order to prevail, to produce *conviction* in the minds of the jurors, but it is sufficient if his evidence outweighs that of the opposite party, and the jury considers from the evidence his contention as more probably true than otherwise. A similar instruction was condemned in *People* v. *Miller,* 171 Cal. 649, [154 Pac. 468],

and more recently in the case of *In re Ross Estate*, 179 Cal. 629, [178 Pac. 510], and by reason thereof each cause was reversed. The corresponding language in the Miller case was: "Preponderance of the evidence means that degree of evidence which proves to a moral certainty, or, in other words, that degree of proof that produces conviction in an unprejudiced mind, regardless of the number of witnesses from whom it proceeds."

In the Ross case the objectionable portion was: "By a preponderance of evidence is meant that amount of evidence which produces conviction in an unprejudiced mind." It is apparent that by reason of the expression, "to a moral certainty," the instruction in *People* v. *Miller* was more objectionable than the one involved in this case. The Ross instruction, though, contains the identical language of the instruction herein, and it was given in a similar case.

We must hold, therefore, that said instruction contained an inaccurate statement of the rule as to "preponderance of evidence." However, for the reasons stated in *Lawrence* v. *Goodwill*, 44 Cal. App. 440, [186 Pac. 781], and *Boa* v. *San Francisco-Oakland Terminal Rys.*, 182 Cal. 93, [187 Pac. 2], the inaccuracy was virtually cured and it was rendered innocuous by a consideration of the entire charge. In the former, the court instructed the jury that "if the plaintiff has proven the material allegations of his complaint, by such evidence as satisfies and produces conviction in the minds of the jury, then he may be said to have proven his case by a preponderance of evidence. When you are satisfied that the truth lies with a single witness or with any number, you are justified in returning a verdict in accordance therewith. This is what is meant by a preponderance of proof. It is that character or measure of evidence which carries conviction to your minds." The foregoing is probably more objectionable than the one before us, but after a thorough consideration of the question in the light of other instructions, especially this one, "in civil cases the affirmative of the issue must be proven; the affirmative being upon the plaintiff, upon him therefore rests the burden of proof and he must establish his case by a preponderance of the evidence; that is to say by the greater weight of the evidence," this court, through Justice Hart, reached the conclusion that

the jury was not misled by the inaccurate portion of the charge.

In the Boa case, *supra,* the jury was instructed: "The defense of contributory negligence on the part of the plaintiff is an affirmative defense, and unless it appears from the evidence on the part of the plaintiff, must be established by the defendant to your satisfaction by a preponderance of the evidence, and if in your minds the evidence is evenly balanced, the defense fails in that particular." The supreme court condemned the use of the phrase "to your satisfaction," but held that it was rendered harmless by other instructions and followed certain decisions from other jurisdictions to the effect that such instruction "is not reversible error where the other instructions in the case clearly define what is meant by a preponderance of the evidence and distinctly advise them that a preponderance of the evidence will be sufficient to justify a finding in favor of the party having the burden. In such cases it is held that the words 'to the satisfaction of the jury' are equivalent to 'find' or 'believe.' "

Herein, in the first part of the instruction complained of, it is implied that the preponderance of evidence means the greater weight of evidence, for the court stated that if the evidence were equally balanced there would be no preponderance.

From this expression the jury would naturally infer that if it "preponderated" in favor of the party having the burden the requirement of the rule would be satisfied. But scarcely any doubt could remain as to what the court meant by "produces conviction" when the jury considered this instruction: "The jury are instructed that the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or state of facts. In determining upon which side the preponderance of evidence is, the jury should take into consideration [reciting certain recognized tests of credibility] and from all these circumstances determine upon which side is the weight or preponderance of the evidence.

"You are not to be governed by the number of witnesses but by the weight or preponderance of the evidence. The plaintiff must prove the case by the preponderance of the testimony by the greater weight of the evidence. This does

not necessarily mean a greater number of witnesses who testify on any side of the issue or issues involved in any case, but according to the weight you give to the testimony of each witness.''

If, in the consideration of all these instructions, the jurors were misled by said objectionable expression, they must have been stupid, indeed.

[2] Appellant also criticises the following portion of another instruction: ''What we mean by soundness in this connection is not that the mind should be in its full vigor and power but that its faculties, its machinery, should be in working order so to speak, with an active power to collect and retain the elements of the business to be performed for a sufficient time to perceive their obvious relation to each other.''

The instruction is somewhat obscure, but we do not consider it misleading. The jurors might find some difficulty in comprehending it, but in another part of the charge they were instructed that to be of sound and disposing mind the deceased ''must have understood what he was doing.'' We are satisfied that, taken together, the instructions on this subject could not have created any prejudicial impression. If appellant desired any fuller or more accurate definition or instruction he should have requested it.

Indeed, we find nothing in the record to show that these instructions were not given on request of appellant. The incompleteness of the record in that respect is probably due to the fact that no attack was made upon the instructions on the motion for a new trial, or, indeed, until the final brief was filed.

[3] However, if we concede that error was committed as claimed, and that it was not the fault of appellant, then the cause should not be reversed, for the sufficient reason that, under the evidence submitted, it is not at all probable that, if a new trial were had, any fair jury would reach a different result. We may go further and say that the proof of the sanity of the testator, in the legal sense, seems to have been so thorough and overwhelming as to make it almost inconceivable that there was any miscarriage of justice. In other words, if we were to grant all the errors charged in both briefs of appellant we should have a clear case for the

application of the recent amendment to the constitution (sec. 4½, art. VI).

It is probably seldom, in a serious contest of this character, that the contrast is so great in favor of the proponent of the will as against the contestant. Considering the immediate circumstances attending the execution of the will, we may remark that three persons were present besides the testator: Fred Martin, his confidential clerk; George A. Tebbe, the man who drafted the will under the direction of decedent, and R. S. Taylor, a leading attorney of Yreka. These witnesses had known Mr. Guilbert intimately for many years. They testified minutely to what occurred at the time he executed his will, and if credit is to be given to their statements, there can be no doubt that the testator had a clear conception of every essential element of the transaction; he comprehended what property he owned; he knew the objects of his bounty; he understood what disposition he was making of his possessions and he had no difficulty in giving expression to his testamentary purpose. We may add that these witnesses also affirmed, as intimate acquaintances, the complete sanity of the testator. They were joined by other intimate acquaintances, his bankers, his regular physician, his friends and business associates, many of whom had known him for a lifetime, and they unqualifiedly declared that he was at all times during their acquaintance of sound mind. We may state also that there seems to be nothing unnatural or extraordinary in the terms of the will. The testator was a bachelor, and his collateral kindred apparently had no particular claims upon his bounty. He did, however, remember them in his will, leaving to one brother the sum of five thousand dollars. To contestant, who was the son of a half-brother, he devised the sum of five hundred dollars and he had a life insurance policy of three thousand dollars in favor of contestant's mother. There were gifts to other relatives and the residue of his estate, amounting to a considerable sum, was left to respondents, who were strangers to his blood. But he had an affection for them; they had been kind to him and had been attentive to his invalid sister while she resided with him, and it is not surprising that he thus manifested his appreciation of what they had done.

On the other hand, no intimate acquaintance expressed the opinion that he was insane, although some of them related instances of peculiar and eccentric conduct on the part of the deceased. These, however, were all consistent with entire sanity. The most serious circumstance, it may be said, occurred on January 15th, when he was undoubtedly stricken with a serious malady. He seemed to be unable to control his movements, he "was staggering around and mumbling to himself, didn't seem to comprehend what he was doing." One of the physicians described it as the condition of a man suffering from overindulgence in alcoholic drink or some powerful drug. This may have been the case, as the deceased was in mortal dread of influenza then prevailing, and to fortify himself had laid in a large supply of whisky. At any rate, he recovered from the attack that day, and there is no evidence that the incident affected his mind in the slightest at the time he executed his will.

It is true that two physicians, who were called in to prescribe for him, expressed the positive opinion that he was insane. They both were trained and experienced men in their profession, and their views are entitled to respectful consideration. But they were applying a different test from what the law requires in order to determine a person's competency to make a will.

[4] Anything short of a normal and healthy mind "free from any defective co-ordination arising from disease or decay," in a medical sense, may constitute insanity or unsoundness of mind, "but the law does not demand such perfection to give capacity to manage one's affairs and make valid disposition of property." (*Estate of Collins*, 174 Cal. 670, [164 Pac. 1110].) [5] The insanity which will render a will invalid is general mental incompetency, or some narrower form under which the testator is the victim of some hallucination or delusion, and in the latter instance the act to be avoided must have been produced in whole or in part by said delusion. (*Estate of Chevallier*, 159 Cal. 161, [113 Pac. 130].)

That said physicians had in view the medical and not the legal standard, and that their opinions could not be allowed justly to prevail against the mass of evidence show-

ing the competency of Mr. Guilbert to make his will, appears clearly from the record.

Indeed, one of them said that if the testator was capable of transacting business he would still pronounce him insane, while the other—strange to say—declared that under such circumstances he would consider him sane, thus virtually lending support to the cause of respondents, since there can be no doubt that the testator understood and was capable of transacting business affairs. It may be added that the first of these did not see the testator until one week after the execution of the will, and there can be no question that there had been a marked deterioration, mentally and physically, in the condition of the patient.

Without going further into the incidents of the case, we conclude, having read the transcript carefully, that the jury's conclusion was legal and just, and that, in the light of the principles enunciated in the *Estate of Carithers,* 156 Cal. 422, [105 Pac. 127], *Estate of Chevallier, supra,* and *Estate of Collins, supra,* a finding in favor of contestant could not be upheld.

The judgment is affirmed.

Ellison, J., *pro tem.,* and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1920.

All the Justices concurred.