[Civ. No. 4848. Third Appellate District.—November 7, 1933.]

EUGENE CHORN, a Minor, etc., Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, W. H. Spaulding and W. H. Hatfield for Appellant.

Sheridan Downey for Respondent.

THOMPSON, J.—The defendant has appealed from an order granting a new trial, after a jury had rendered a verdict in its favor. By the sudden change of traffic signals at the intersection of streets, a pedestrian, who was a ten year old schoolboy, while crossing one of the streets, was caught in a three-foot space between two street-cars which were passing in opposite directions. Both cars stopped, blocking his way. At the command of the motorman to get out of there, the boy ran around the car which stood in front of him and was run down and injured by a passing automobile.

The appellant contends the record shows its freedom from negligence as a matter of law, and that the court therefore abused its discretion in granting the new trial. The respondent asserts the motorman was negligent in failing to observe the boy and stop his car in time to permit him to

safely cross the street, and in ordering the boy from a place of comparative safety without warning him of the danger of an approaching automobile.

The defendant operates an electric street-car system in the city of Sacramento. This system includes a single track extending out Twenty-first Street, which runs in a northerly and southerly direction. It crosses Y Street, where the accident occurred, at right angles. These streets are paved and are sixty feet in width. Double tracks are maintained across Y Street and for considerable distance on either side thereof to enable the cars to pass. These tracks cross Y Street at a distance of six feet apart. This leaves a space of about three feet between the cars as they pass. These streets are busy thoroughfares at this intersection. Traffic is controlled at this intersection by means of red and green electric signals which alternate automatically at short intervals.

Just prior to the accident two street-cars which were approaching Y Street from opposite directions were stopped by the flashing of the red light. The plaintiff and three companions, who were riding in the south-bound car, got out and proceeded to cross Twenty-first Street, traveling along the pedestrians' pathway. The other boys succeeded in crossing the street. The plaintiff was the last of the quartet to alight from the car. Just before he reached the center of the street the traffic signals changed, and both street-cars resumed their respective courses. The motorman of the north-bound car was engaged in making change for a passenger who boarded his car at the southerly line of Y Street. He did not notice the predicament of the plaintiff until his car reached a point within a few feet of the boy. Bewildered by the sudden change of signals and the resumption of traffic across Y Street, the boy stopped at the point where the pedestrians' pathway crosses the intervening space between the street-car tracks. This was but a three-foot space between passing cars, but it was comparatively safe. When the motorman of the north-bound car observed the boy in the center of the street, he suddenly applied the emergency brake and stopped. About the same time, the out-bound car also stopped. This left the boy between the two cars. The motorman on the north-bound car opened the window of his car and in a gruff tone of voice ordered

the boy to "get the hell out of there". The plaintiff testified in that regard:

"After I got off the street car I walked around here (indicating on map). Then I looked up, and my conductor, he waved me on, he went like this (indicating). . . . When I was about that far, when I looked down ahead, I saw this signal that said . . . 'stop', then as I— Q. (Interposing) . . . You state that the motorman waved you across, is that correct? A. Yes sir. . . . Q. Whereabouts were you when you first noticed it (the changed signal), Eugene? A. Right here (indicating). Q. You hadn't yet gotten on the track? A. No, sir. . . . I took a couple of steps and stepped right up here on the button, I was right by the button then. . . . After I saw it (the north-bound car) coming over,— I stood still there for a minute or two, then when this street car was coming up, then it was pretty close to me, then it was about three feet from me, then this (southbound) car started up about to,—then stopped quick, then that made it about there (indicating on board). . . . After the two cars stopped, and I was in there, I just didn't know what that man, that conductor said, he either said, he told me to get the hell out of there, or, get the hell across, then I walked across (in front of the northbound car) and as I walked across this Mr. Benetti was coming along (in an automobile) and hit me right there. . . . When I was standing there, he (the motorman) was waving at me like that."

At the command of the motorman, the plaintiff ran around in front of the north-bound car and attempted to complete his passage across Twenty-first Street. His view of the easterly portion of the street was obscured by the street-car as it stood blocking the pedestrians' pathway. No warning of the approaching automobile was given by the motorman, or by anyone else. The boy emerged from behind the street-car just in time to be struck down by an automobile which was passing the street-car on its course northerly along Twenty-first Street. The plaintiff was injured as a result thereof. Suit for damages was brought against the street railway company. The cause was tried before a jury, which rendered a verdict in favor of the defendant. Upon motion of the plaintiff, the court awarded a new trial. From this order the defendant has appealed.

The appellant contends the evidence shows, as a matter of law, that it was free from negligence which contributed to the accident; that the motorman had no authority to direct traffic, and no further responsibility for the plaintiff's safety since he was no longer a passenger on defendant's street-car. It is therefore asserted the court abused its discretion in granting a new trial.

It is conceded by respective parties that the granting of a new trial is addressed to the sound discretion of the trial judge, and that his ruling upon that motion will not be disturbed on appeal except for a clear abuse of discretion. On a motion for new trial, the credibility of witnesses and the weight and sufficiency of the evidence are questions which are to be determined by the trial judge, subject only to the exercise of a sound discretion on his part. (20 Cal. Jur., p. 27, sec. 13; 2 Cal. Jur., p. 905, sec. 533; *Petroff* v. *Nunes,* 123 Cal. App. 614 [11 Pac. (2d) 648].)

Since the record contains substantial evidence which may indicate a lack of ordinary care on the part of the motormen of the passing cars which may reasonably have contributed to the accident, the discretion exercised by the trial court in granting a new trial may not be disturbed on appeal, and the order should, therefore, be affirmed.

It may be conceded as the appellant contends, based upon the authority of *Boa* v. *San Francisco-Oakland Terminal Rys.,* 182 Cal. 93 [187 Pac. 2], that its liability as a common carrier of passengers ceased when the plaintiff left the street-car and became a pedestrian attempting to cross the street. But this does not mean that a street-car company is exempt from liability for ordinary negligence resulting in injury to a pedestrian who afterward attempts to cross the street along which the car line extends, merely because the pedestrian may have previously been a passenger on one of defendant's cars. The obligation to exercise ordinary care in the operation of its street-cars so as to prevent injury to pedestrians is separate and distinct from its common carrier duty toward passengers.

In the present case, while there is a conflict of testimony regarding the affair, substantial evidence exists from which it may be assumed the trial court believed the motormen of both street-cars saw the plaintiff attempting to cross the

street in the pedestrians' pathway at the very time the signal lights changed. Both cars promptly resumed their respective courses without giving the boy an opportunity to complete his journey across the street or it may be assumed the motorman of the north-bound car was absorbed in making change for the passenger who boarded his car at the southerly border of Y Street, and that he therefore failed to perceive the predicament of the plaintiff as he stood at the center of the street, until his car had nearly reached the point where the boy stood. The trial court had a right to assume, from the circumstances, that the motorman failed to exercise due diligence in running his car across a busy thoroughfare without first observing the condition of the traffic. It may be reasonably assumed the motorman of the north-bound car, by the exercise of due care, should have seen the plaintiff in time to have stopped his car and to have afforded a safe, unobstructed crossing. The doctrine of the last clear chance appears to be applicable to the circumstances of this case. Moreover, it is not unreasonable to conclude that both motormen started their respective cars too hastily, upon the change of traffic signals, to enable those who were then engaged in crossing the street to safely reach the opposite side. Surprised at the sudden change of signals, and bewildered by the instant resumption of traffic and the proximity of street-cars on both sides of him, the boy stopped and remained in the intervening space between the tracks, which was a place of comparative safety. Whether this conduct was an exercise of reasonable precaution on the part of a ten year old boy, under such circumstances, was a problem for the determination of the trial judge on the motion for a new trial. (*Shannon* v. *Central-Gaither Union School Dist.*, 133 Cal. App. 124 [23 Pac. (2d) 769].) Considering the youthful appearance of the boy, it is not unreasonable to assume the motorman was guilty of a lack of adequate precaution in commanding him to get out of his position of comparative safety, without first observing and warning him of the danger of an approaching automobile. The motorman could have seen the approaching machine, but the boy could not. The motorman said he thought the boy would return in the direction from which he had come. But he acknowledged that ''You can't judge what a child will do. . . . Nobody else can't.'' Moreover,

the south-bound car had already crossed the pedestrians' pathway, where it also stopped, barring his way to return. The boy may reasonably have believed he would be struck by the car behind him if he attempted to cross its pathway in retracing his steps, or that he would be run down by automobiles traveling southerly beyond the street-car from which he had just alighted. At least, obedient to the harsh command of the motorman, and ignorant of the danger of approaching machines, he rushed out from behind the car into the very pathway of the north-bound automobile and was struck and injured thereby. Of course the motorman sought to protect the boy from the danger of the perilous position in which he stood. It may be assumed he should have reasonably anticipated the boy, at his command to get out from between the cars, would blindly rush out across the street from behind the car, and that he should therefore have first looked for approaching automobiles and warned him before he ordered him out from that place. But regardless of whether it may be deemed to constitute negligence for the motorman to have ordered the boy out from between the street-cars without first observing and warning him against approaching machines, still, we are of the opinion there is adequate evidence of negligence on the part of the motorman in failing to observe the plaintiff in his perilous position in time to have slackened the speed of his car or to have stopped it at a distance which would have afforded the boy an opportunity to have safely completed the crossing of the street unobstructed by the intervening street-car. This furnishes sufficient evidence, under the established rule of law, to support the order granting a new trial.

The order is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 7, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1934.