[Crim. No. 351.   Third Appellate District.—September 26, 1916.]

## THE PEOPLE, Respondent, v. CHARLES F. PRECIADO, Appellant.

CRIMINAL LAW—APPEAL—STATEMENT OF "GROUNDS" AND "POINTS"—CONSTRUCTION OF SECTION 1247, PENAL CODE.—In an application for an appeal, made under section 1247 of the Penal Code, it is sufficient if the application states the *grounds* of the appeal, without specifying the *points* upon which the appellant relies, as there is no substantial distinction intended in the use of the two words.

ID.—EMBEZZLEMENT—ESTABLISHMENT OF DEFENSE OF INSANITY—DEGREE OF PROOF—ERRONEOUS INSTRUCTIONS.—In a prosecution for the crime of embezzlement, wherein the principal defense made was that the defendant at the time of the commission of the alleged offense was not responsible, because he was incapable of understanding the nature and quality of the act on account of his then insanity, it is erroneous for the court to instruct the jury in three or four different instructions that the defense of insanity must be "clearly proved," "clearly established," or "satisfactorily established," although the jury was also instructed that the defense of insanity may be established by a preponderance of the evidence.

ID.—INSANITY—PROOF OF DEFENSE—PREPONDERANCE OF EVIDENCE.—The defense of insanity may be established by a preponderance of the evidence, and trial courts are not allowed to qualify the rule by requiring a higher degree of proof.

ID.—EMBEZZLEMENT OF TAX MONEYS—PLEA OF ONCE IN JEOPARDY—EVIDENCE—TAKING OF MONEYS AT SAME TIME.—In the prosecution of a tax collector for the alleged embezzlement of certain moneys paid to him as such officer by certain persons, wherein he interposed the plea of once in jeopardy based upon his acquittal of the alleged embezzlement of moneys paid to him by other parties, it is error to refuse him permission to show in support of his plea that both sums were taken at the same time.

ID.—ACQUITTAL—WHEN A BAR.—Where the offense on trial is a necessary element in, and constitutes an essential part of, another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution of the other.

APPEAL from a judgment of the Superior Court of Madera County, and from an order denying a new trial. Charles O. Busick, Judge presiding.

The facts are stated in the opinion of the court.

Lee D. Windrem, R. R. Fowler, Joseph Barcroft, and H. I. Maxim, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was informed against by the district attorney of the county of Madera for the crime of embezzlement. He was tried and convicted, and thereafter moved for a new trial, which was denied. He thereupon appealed from the judgment and the order denying his motion for a new trial.

1. The attorney-general has made a motion to dismiss the appeal principally upon the ground that defendant, in his application for an appeal under section 1247 of the Penal Code, failed to file or present to the trial judge an application containing a statement of the grounds and points on which he relies. The contention is that defendant should have stated in his application not only the *grounds* of his appeal, but should also have specified the *points* on which he relied; that the statute is mandatory in its requirement that the application contain a statement of "grounds" and "points." Section 1247 provides that upon an appeal taken from any judgment or order of the superior court, in any criminal action, where such appeal is allowed, "the defendant . . . must, within five days, file with the clerk and present an application to the trial court, stating in general terms the grounds of the appeal and the points upon which the appellant relies, and designate what portions of the phonographic reporter's notes it will be necessary to have transcribed to fairly present the points relied upon. If such application is not filed within said time, the appeal is wholly ineffectual and shall be deemed dismissed and the judgment or order may be enforced as if no appeal had been taken." The section also provides that the court shall, within two days after such application is made, direct the phonographic reporter who reported the case to transcribe such portion of his notes as in the opinion of the court "may be necessary to fairly and fully present the points relied upon by the appellant." It will be observed that while the terms "grounds" and "points" are conjunctively stated in the earlier part of the section, the direction as to the portion of the reporter's notes

necessary to have transcribed is that the transcription shall be such as "to fairly present the points relied upon," and further along in the section it is made the duty of the court, "after such application is made," to direct the reporter to transcribe such portion of his notes as may be necessary to present "the points relied upon by the appellant." The term "points" as above shown, it seems to us, was used as embracing "grounds" as well as "points," and, as there used, indicates that the legislature did not intend that an appellant should lose his appeal as "wholly ineffectual" unless in his application he specifically and separately states therein that his reasons for the appeal are to be deemed both the "grounds" and "points" upon which "appellant relies."

The application was entitled: "Settlement of Grounds on Appeal under Sec. 1247 P. C." Then follows title and cause.

The application recites the proceedings, the trial, verdict, motion for new trial, order denying motion, judgment, and notice of appeal from the judgment and order. It then states: "That said appeal is taken upon the following general grounds," and the grounds (briefly stated) were as follows:

1. Once in jeopardy; 2. Errors in rulings with reference to the allowance of challenges for cause; 3. Misconduct of district attorney; 4. Errors of the court in its rulings upon evidence; 5. Errors of the court in the interrogation of witnesses; 6. The verdict is contrary to law; 7. The verdict is contrary to evidence.

The application specifically mentioned portions of the record called for and also for "the entire transcript of the testimony taken in said action."  .

With this application before the court, it made an order directing the phonographic reporter "to transcribe the following portions of the testimony and proceedings given and had in the above-entitled cause." Then follow in the order the portions of the testimony and proceedings specifically called for in the application, including "all the testimony given at the trial, and all objections, rulings, and exceptions made and taken at the trial." This order was complied with, and the entire record is now here for review and appears to be in authentic form.

The statute only requires that the application state "in general terms the grounds of the appeal and the points upon

which the appellant relies.'' The grounds stated in the present case were specific enough to indicate upon what errors defendant would rely, and he designated the portions of the reporter's notes which were deemed ''necessary to have transcribed to fairly present the points relied upon.'' Section 1248 of the Penal Code provides that: ''If the appeal is irregular in any substantial particular, but not otherwise, the appellate court may, . . . order it to be dismissed.''

It was said in *Estate of Nelson,* 128 Cal. 242, [60 Pac. 772] : ''The right of appeal is conferred by the constitution, and statutes and rules of procedure for its exercise are to be liberally construed; and no appeal will be dismissed upon technical grounds, where there has been no violation or disregard of any express rule of procedure.'' Unless we can say that the failure of defendant to state in his application that the ''grounds'' therein set forth were also the ''points'' on which he relied is a fatal ''violation or disregard'' of the provisions of section 1247, the motion, in our opinion, must be denied. We cannot so hold. We fail to appreciate respondent's argument that there is, in contemplation of the statute, a substantial distinction intended in the use of the terms ''grounds'' and ''points.'' By stating ''in general terms the grounds,'' we think the defendant complied with the statute sufficiently to entitle his appeal to be heard.

2. The principal defense made in the case was that defendant, at the time of the taking of the money, was not responsible, because he was incapable of understanding the nature and quality of the act on account of his then insanity. The court gave the following instructions:

''You are instructed that. in prosecution for crimes the defense of insanity is often interposed, and thereby becomes a subject of paramount importance in criminal jurisprudence. A due regard for the ends of justice and the welfare of society no less than mercy to the accused requires that it should be thoroughly and carefully weighed. It is a plea sometimes resorted to in cases where aggravated crimes have been committed under circumstances which afford full proof of the overt acts and render hopeless' all other means of evading punishment. While, therefore, it ought to be viewed as a not less full and complete than it is a humane defense when satisfactorily established, yet it should be examined into

with great care lest an ingenious counterfeit of the malady furnish protection to guilt.

"Insanity as used in this sense means such a diseased and deranged condition of the mental faculties as to render a person incapable of distinguishing between right and wrong in relation to the act with which he is charged, and to establish a defense on the ground of insanity it must be clearly proved that at the time of committing the act the party accused was laboring under such a defect of reasoning from disease of the mind as to not know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing wrong.

"Hence you are instructed that in order for insanity to be available as a defense in this case, the defendant herein must establish by a preponderance of evidence that he was so diseased and deranged in mind as to render him incapable of distinguishing between right and wrong, and it must appear from such preponderance of evidence that he was so incapable of distinguishing between right and wrong in relation to the particular offense charged in the information, and it must appear, further, by such preponderance of evidence that he was in such a mental condition as to be incapable of distinguishing between right and wrong in relation to the act with which he is charged in the information upon the particular date so charged and designated in the information.

"You are instructed that the law of this state does not recognize the defense of insanity based upon claims that a defendant committed the crime while laboring under an uncontrollable or irresistible influence, nor does it recognize that form of insanity commonly known as emotional insanity beginning on the eve of the criminal act and ending with its consummation. Such forms of insanity have no legal standing in this state as a defense to crime. It is necessary that insanity, in order to be a defense, it must be clearly proved that at the time of committing the act the party accused was laboring under such a defect of reason and from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong."

In *People* v. *Wreden,* 59 Cal. 392, the defense was insanity, and among the instructions was the following: "I charge

you that when insanity is relied upon as a defense, the burden of proof is with the defendant, and the proof must be such in amount that if the single issue of sanity or insanity of the defendant should be submitted to the jury in a civil case, they would find that he was insane, or, in other words, that *insanity must be clearly established* by satisfactory proof; it is not sufficient that you should entertain a reasonable doubt as to his sanity, but the proof must be satisfactory and the fact of insanity *clearly established*." (Italics the court's.) The court referred to the rule as previously well settled that "insanity, in order to constitute a defense in a criminal action, need not be proved beyond a reasonable doubt, but that it might be established, 'by mere preponderating evidence.'" Referring to the instruction, the court said: "Is not the expression *clearly* 'established by satisfactory proof' the full equivalent of 'established by satisfactory proof beyond a reasonable doubt?' How can a fact be said to be clearly established so long as there is a reasonable doubt whether it has been established at all? There can be no 'reasonable doubt' of a fact after it has been clearly established by satisfactory proof." After giving the definition of "clearly" according to Webster, and after stating the definition of reasonable doubt as defined by Chief Justice Shaw, the court said: "A juror would have no excuse for saying that he did not 'feel an abiding conviction to a moral certainty' of the truth of a fact which had been '*clearly* established by satisfactory proof.' Such proof, if any could, would convince and direct the understanding, and satisfy the reason and judgment of a conscientious juror. Under the instruction given it was the duty of the jury to require that the defense of insanity should at least be proved beyond a reasonable doubt. This was error."

In *People* v. *Wells,* 145 Cal. 138, [78 Pac. 470], the instruction was, as the court stated, "almost in the exact language of the one condemned in *People* v. *Wreden*." Said the court, after quoting what is above taken from the opinion in that case: "We have not been referred to a case, nor do we know of one in this court, overruling or modifying the decision in *People* v. *Wreden,* 59 Cal. 393. On the contrary, in *People* v. *Allender,* 117 Cal. 81, [48 Pac. 1014], the court instructed the jury that the burden rested upon the defendant of proving his insanity by a preponderance of evidence

merely,'' and the court referred to the fact that such had been the rule in this state for a period of thirty years.

The latest discussion of the question by the supreme court is found in *People* v. *Miller*, 171 Cal. 649, [154 Pac. 468]. In that case the trial court instructed the jury correctly as to the rule that a preponderance of the evidence is sufficient where insanity is pleaded, but it gave a further instruction as to what was meant by the term ''preponderance of the evidence,'' as follows: ''Preponderance of the evidence means that degree of evidence which proves to a moral certainty, or, in other words, that degree of proof that produces conviction in an unprejudiced mind, regardless of the number of witnesses from whom it proceeds.''

Chief Justice Angellotti, speaking for the court, shows quite clearly that the definition thus given was substantially the same as that of proof beyond a reasonable doubt, and therefore violated the rule that insanity may be established by a preponderance of the evidence merely. The court said: ''That such is the effect of the instruction given is shown by what is said in *People* v. *Wreden,* 59 Cal. 393, and *People* v. *Wells,* 145 Cal. 142, [78 Pac. 470], where it is held that an instruction declaring that insanity 'must be clearly established by satisfactory proof' is the full equivalent of one making it incumbent on a defendant to establish insanity beyond a reasonable doubt.''

As we understand this reference to the case of *People* v. *Wreden,* the court intended to give its approval of what was there said, and because of such approval it followed that the instruction in the Miller case was error; that is, that in the Wreden case the instruction called for proof equivalent to the proof called for in the Miller case, or, in other words, both instructions meant the same thing and both were erroneous.

In the present case the only instruction given defining what is meant by preponderance of the evidence was as follows: ''By a preponderance of the evidence is meant the greater weight of the evidence—that which is the more convincing of its truth. It is not necessarily determined by the number of witnesses for or against a proposition.'' Notwithstanding this definition, the jury were told that the defense of insanity is to be received as ''a humane defense when *satisfactorily established*''; again, in another instruction, ''to establish the defense of insanity it must be *clearly proved*'';

again, in another instruction, "It is necessary that insanity, in order to be a defense, it must be *clearly proved*," etc. How else could the jury have understood the instruction that insanity may be established by a preponderance of the evidence than that this preponderance must be "satisfactorily established" and "clearly proved?"

In the case of *Beach* v. *Clark*, 51 Conn. 200, the action was on a promissory note on which defendant was indorser as an accommodation to plaintiff, and as security therefor he held certain personal property conveyed to him by plaintiff. The trial court instructed the jury that "if the defendant held the property in question as collateral security, the burden of proof is on him to clearly prove his authority to sell." This was held error, the supreme court of errors saying: "The use of that word [clearly] required the defendant to assume a heavier burden than the law imposed upon him. The law only required him to prove by a preponderance of proof the material fact on which he relied. The charge required him to do more than that: to prove it clearly, without uncertainty, free from doubt or question. It required him to prove it with substantially the same amount of proof that is required to substantiate a criminal charge; and that is not the law. . . . For this reason there must be a new trial."

In *Hall* v. *Wolf*, 61 Iowa, 559, [16 N. W. 710], the action related to the sale of certain personal property. The instruction given was that the sale "should be clearly and fairly proven." Said the court: " 'Clearly and fairly proven' imports more than a mere preponderance of evidence. In the case of *West* v. *Druff*, 55 Iowa, 335, [7 N. W. 636], an instruction was held to be erroneous which required 'clear and satisfactory evidence' to satisfy the jury of an issuable fact. That instrument [instruction?] cannot be distinguished from the one now under consideration."

In *French* v. *Day*, 89 Me. 441, [36 Atl. 909], the action was trespass and the court instructed the jury: " . . . It is incumbent on the defendants to show, by a clear preponderance of the evidence and by convincing proof, their right to do it in order to prevent a verdict against them." In discussing the instruction, the court said: " 'Preponderance' means to outweigh; to weigh more. A 'clear preponderance' may mean that which may be seen, is discernible, and may be appreciated and understood. In this sense, the expression

might be unobjectionable; but it may convey the idea, under emphasis, of certainty, beyond doubt, and very likely would do so to the common mind. At any rate, the expression is equivocal and mischievous. 'Convincing proof' may be said to mean that degree of certainty required to sustain a given postulate. But that view assumes that the hearer knows the rule that governs such case, which jurors are not supposed to know, but of which they should be informed. The two expressions, coupled, must have conveyed to the jury an erroneous basis for their verdict. Exceptions sustained."

In *McEvony* v. *Rowland,* 43 Neb. 97, [61 N. W. 124], the instruction required that the transaction "must be clearly established." The court said that the party "is not required to satisfy the jury in such a case, beyond question, that the sale is an honest one. A preponderance of the evidence is all that is required (citing *Stevens* v. *Carson,* 30 Neb. 544, [9 L. R. A. 523, 46 N. W. 655]). The word 'clearly' means without uncertainty."

Some of the qualifying terms which have been held to import a higher degree of proof than is meant by a preponderance of evidence are stated in 17 Cyc., pages 763, 764, namely: "an abiding conviction," a "clear conviction," "convinces," "clearly," "fully," "clearly and satisfactorily," etc.

The rule in some other jurisdictions is not the same as our supreme court in an early day declared it. But where the rule has been followed that the defense of insanity may be established by a preponderance of the evidence, the appellate courts have held that no higher degree of proof should be required, and that it is error to charge the jury by language importing any higher degree of evidence to be necessary to establish such defense.

The attorney-general cites *People* v. *Hoin,* 62 Cal. 120, [45 Am. Rep. 651], as an instance where the supreme court inferentially approved of the rule that this defense must be clearly proved. In that case the quotation from the opinion of Chief Justice Tindall was used to illustrate what constituted insanity such as would be accepted as a defense and not the character of proof necessary to establish it. This will at once be seen by reading the instruction which was under discussion. The court was composed of the same members when the case cited was before the court as when

the case of *People* v. *Wreden* was decided, and it is not to be supposed that if the court had changed its opinion upon so important a rule, it would have failed to mention its decision in the Wreden case. Whatever may be found in decisions, the rule is firmly established that the defense of insanity may be established by a preponderance of the evidence merely, and that being the rule, trial courts are not allowed to qualify it by requiring a higher degree of proof.

In the instant case nothing appears in the record to lead to a suspicion that the plea of insanity was a subterfuge, and put forward as a means of escaping punishment. Expert and nonexpert testimony was introduced for and against this defense, sufficient in quantity and forcefulness to have prevented the reviewing court, under the settled rule, from interfering with the verdict whichever way the jury may have decided the issue.

It is contended by the attorney-general that the trial court having so clearly instructed the jury that the defense of insanity may be established by a preponderance of the evidence, the jury could not have been misled by the instruction to which complaint is made. The same contention was urged in *People* v. *Miller,* 171 Cal. 649, [154 Pac. 468], where "the jury," as the supreme court points out, "were explicitly and correctly instructed that it was not necessary for defendant to show his insanity beyond all reasonable doubt, but only by a preponderance of evidence, as in civil cases . . . that, in other words, insanity may be established by a preponderance of evidence merely." In the Miller case the error arose in the definition which the trial court gave to what constitutes preponderance of evidence. In the present case, the error arose from the fact that the learned trial court in three or four different instructions on the subject instructed the jury that the defense must be "clearly proved," "clearly established," "satisfactorily established," and these expressions were so closely related to the instructions as to the preponderance of evidence being sufficient that we do not feel at liberty to say the jury were not influenced by them.

Whether the judgment should be affirmed notwithstanding such error, under the provision of section 4½, article VI, of the constitution, as was said in the Miller case: "We are satisfied that the evidence was of such a nature that such a conclusion may not fairly be reached." We do not wish to be

understood as holding that there was not sufficient evidence to warrant the verdict or that the insanity of the defendant was not shown by a preponderance of the evidence. What we mean to say is that upon this issue the record discloses a condition of facts presented by the defendant from which, under the rule of preponderance of the evidence, the jury might reasonably have found in favor of the theory of insanity.

3. A plea of once in jeopardy was interposed and defendant claims that upon the evidence he was entitled to a verdict of acquittal. It appeared that defendant was put upon his trial for having embezzled certain funds from the county paid to defendant as tax collector by Carrie M. Hammel, such embezzlement having been committed on the first day of December, 1913. Upon this charge defendant was acquitted. Thereafter a complaint was filed in the justice's court charging him with the embezzlement of certain funds on the first day of December, 1913, paid in to him as tax collector by Seth Mann and Myrtle Mann. On his arraignment, after having been held to answer, he pleaded former acquittal. Later and when he was brought to trial, by leave of court, the district attorney amended the information by changing the date of the alleged embezzlement to November 1, 1913. The trial resulted in a disagreement of the jury, and upon his retrial defendant was convicted and from that conviction the present appeal is taken. It appeared that defendant received a check for the amount alleged to have been embezzled on October 29, 1913, and that the check was cashed on November 3, 1913. It also appeared that defendant made his verified return in due form of all *moneys* received by him as such tax collector from October 1 to November 1, 1913. The claim of defendant is that the money received from this check, on November 3, 1913, was not due to the county until after his settlement with the treasurer on the first day of December, 1913, and hence falls within the same time as the charge upon which he was tried and acquitted, that is, of having on December 1, 1913, embezzled certain moneys paid in to him as tax collector by Carrie M. Hammel. Section 3753 of the Political Code requires the tax collector, on the first Monday in each month to "settle with the auditor for all moneys collected for the state or county, and pay the same to the county treasurer, and on the same day must de-

liver to and file in the office of the auditor a statement, under oath, showing: 1. An account of all his transactions and receipts since his last settlement; 2. That all money collected by him as tax collector has been paid.''

The charge is that defendant embezzled certain money on November 1st, whereas the evidence was that the money alleged to have been embezzled was the proceeds of a check which, while it was received October 29th, was not cashed until November 3d, and the proceeds became part of the funds for which defendant was to account at the end of the latter month. It is contended that having been embraced in his return for November, this money was included in the return of the money paid in by Seth Mann and Myrtle Mann for the alleged embezzlement of which he was tried and acquitted; that, hence, the only question is, ''Are the two offenses a part of the same criminal act?''

It was held in *People* v. *Meseros,* 16 Cal. App. 277, [116 Pac. 679], that ''proof of the embezzlement or larceny of checks, in the county of the venue, will not support a charge of embezzlement or larceny of the money therein. The contention that checks are money is without support.'' (Syllabus.)

Once in jeopardy and former acquittal are favored pleas (12 Cyc. 364), and ''the right not to be put in jeopardy the second time is as sacred as the right of trial by jury, and is guarded with as much care by the common law and by the constitution.'' (Black, C. J., in *Dinkey* v. *Commonwealth,* 17 Pa. St. 126, [55 Am. Dec. 542].) It seems to be a well-settled rule that where the offense on trial is a necessary element in, and constitutes an essential part of, another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution of the other. In *People* v. *Stephens,* 79 Cal. 428, [4 L. R. A. 845, 21 Pac. 856], the prosecution was for libel, and the question was whether there may be as many prosecutions for libel maintained upon a single article published in a single issue of a newspaper as there are false and defamatory statements concerning a single individual in such article. ''The second prosecution,'' said the court, ''is for a libel contained in the same article and published in the same issue of the same newspaper as the first. The words alleged to be defamatory are not the same in both informations. If they were, the

case would be a plain one. But the publication in both cases was one and the same act. . . . In *Regina* v. *Erlington,* 9 Cox C. C. 86, Cokburn, C. J., said: 'It is a fundamental rule of law that out of the same facts a series of charges shall not be preferred.' " Cases are cited to the rule that "the state cannot split up one crime and prosecute it in parts." (See the rule discussed in *People* v. *McDaniels,* 137 Cal. 192, [92 Am. St. Rep. 81, 59 L. R. A. 578, 69 Pac. 1006].) An elaborate and illuminating note is found in 92 American State Reports, upon the identity of offenses in a plea of former jeopardy. The note is very full upon the "carving" or "splitting" of offenses. The general rule is there stated: "The instance above given, of the larceny of several articles at one time and place by one act of theft, is one of frequent occurrence. In such a case, by the great weight of authority, there is but one offense. The state may, if it sees fit, prosecute the theft of all the articles at once, or it may select what it wishes and prosecute for the larceny of that part, but it cannot split the single larceny into as many charges as there are articles stolen and make of such charges the basis of successive prosecutions. The second and subsequent prosecutions are, then, for the same offense." It is unnecessary to cite further authority.

At the trial the defendant, in proof of his plea, offered in evidence the transcript and proceedings at the trial when he was acquitted. The court sustained the objection offered by the district attorney that the evidence was irrelevant and immaterial, remarking: "I think the proper evidence is the indictment or information on file." And as to this—the only evidence allowed by the court except the verdict of acquittal—the court said: "It appears on the face of the indictment there are two separate and distinct offenses charged, and the acquittal on the former trial on information No. 323 is not the same offense charged in the information No. 341, and the motion to dismiss the information No. 341 and dismiss the case against the defendant is denied."

Of course, the two informations show two different offenses committed at two different times. The second one was amended purposely to so show. But this would not preclude the defendant from showing as matter of fact that both sums of money alleged to have been embezzled were taken at the same time, or rather, it was the duty of the prosecution to

show that the embezzlement was committed as alleged in the information.

We think it was error to confine defendant in the proof in support of his plea to the face of the information on which he was acquitted. We do not mean to hold that the defendant could not be convicted of embezzling the money received November 3d in payment by Seth and Myrtle Mann of their taxes, if, as a fact, he did appropriate it on that day to his own use. That question does not arise. It is claimed that the money embezzled was shown by a shortage in his accounts at the end of November and that this shortage arose from his having at that time—December 1st—failed to account for both the Hammel and Mann money, and that in both instances the taking was at the same time out of the combined funds received during that month. Whatever the fact was, defendant had a right to show that the taking of the money in both instances was one and the same transaction. In other words, if the money embezzled on December 1st included in part both the Hammel and Mann moneys, the offense could not be split into two charges and he be convicted of both.

As there must be a new trial, we have thought it proper to consider the point raised on the plea of once in jeopardy. Other errors are claimed, but we do not find it necessary to consider them.

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 25. 1916.