[L. A. No. 5170. In Bank.—October 20, 1920.]

M. L. WASSERMAN, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

[1] COMMON CARRIERS — ADOPTION OF REASONABLE REGULATIONS — EJECTION OF PASSENGERS.—A carrier of passengers has a right to adopt reasonable rules and regulations for the conduct, comfort, and protection of its passengers, and may enforce such rules or regulations by ejecting from its cars or premises one who wrongfully fails or refuses to comply therewith.

[2] STREET RAILROADS—DESIGNATION OF PLACE OF TRANSFER—REASONABLE REGULATION.—A regulation of a street railway company that transfers are presentable only at the place or places designated thereon is a reasonable one.

[3] ID.—NONCOMPLIANCE WITH REGULATION — MISDIRECTION OF EMPLOYEE OF CAR COMPANY—REFUSAL TO PAY CASH FARE—RIGHT TO RESIST EJECTION.—A street-car passenger who does not comply with the reasonable regulation of the company as to the proper transfer point, even though such noncompliance be the result of a misdirection by one of the company's employees, is not justified in resisting an attempt to eject him from the car in the event of his refusal to pay a cash fare.

[4] ID.—EJECTION OF PASSENGER—USE OF UNNECESSARY FORCE—INSUFFICIENT FINDING.—In an action to recover damages for personal injuries alleged to have been sustained as the result of an attempt by defendant's employees forcibly to eject plaintiff from one of defendant's street-cars after refusal to pay his cash fare, claiming the right to ride on a transfer, a finding that the conductor and motorman seized the plaintiff and with "great force" attempted to eject him, is not a finding of the use of "excessive" or "unnecessary" force, or of the use of more force than was reasonably necessary.

[5] ID.—EVIDENCE—AMOUNT OF FORCE USED—TESTIMONY OF CONDUCTOR.—In such action, it was error to refuse to allow the conductor to testify as to whether he or the motorman used any more force than was necessary in the attempt to eject the plaintiff from the car.

[6] ID.—AMOUNT OF FORCE USED — FORM OF QUESTION — APPEAL — RECORD—OBJECTION NOT AVAILABLE.—In such action, where testimony of the conductor as to the amount of force used in attempting to eject the plaintiff from the car was rejected on the sole ground that the motorman and conductor did use "enough" force, and not on the ground that the question called for the conclusion of the witness, the defendant will not be heard to urge on appeal for the first time that the question was not properly framed.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

2. Validity of rule of street railway with respect to transfers, notes, **Ann. Cas.** 1916D, 586; 8 **L. R. A. (N. S.)** 287; 52 **L. R. A. (N. S.)** 908.

Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

Humphrey Marshall for Respondent.

Frank Karr, R. C. Gortner, E. E. Morris and W. R. Millar, *Amici Curiae.*

LAWLOR, J.—This is an appeal by the defendant, Los Angeles Railway Corporation, a corporation, from a judgment in favor of the plaintiff, M. L. Wasserman, in the sum of $350, in an action to recover damages for personal injuries alleged to have been sustained as the result of an attempt by defendant's employees forcibly to eject plaintiff from one of defendant's cars.

There is practically no dispute as to the facts. On October 6, 1915, respondent boarded one of defendant's cars bound north on Grand Avenue, in the city of Los Angeles. He paid his fare and requested and received a transfer to the East First Street line. According to his testimony, he was without his eyeglasses and therefore unable to read the transfer, so that he asked the conductor where he should change cars, to which the conductor answered, "Transfer at Seventh and Broadway." The transfer point as printed on the slip was First and Spring. Respondent descended from the Grand Avenue car at Seventh and Broadway and there boarded a car of the East First Street line. When his fare was demanded he presented the transfer, but the conductor told him it did not entitle him to ride from Seventh and Broadway, refused to accept it, and demanded that respondent either pay a cash fare or leave the car. Respondent refused to comply, and explained that he had been told by the first conductor the transfer was good at Seventh and Broadway, that he did not have any money with which to pay a cash fare, and that he was hurrying "to go to work on a job." The conductor reiterated his refusal to accept the transfer and his demand that respondent pay a cash fare or get off the car, and, upon the latter's continued refusal to do either, attempted to eject him. Respondent resisted, the motorman was called, and together he and the conductor seized respondent. A struggle ensued, in the course of which respondent suffered the injuries complained

of. Finally the conductor accepted the payment of a cash fare for respondent from one of the other passengers, and respondent was allowed to remain on the car. The cause was tried before the court without a jury. The court made findings of fact and conclusions of law and, as already stated, rendered judgment for the respondent in the sum of $350.

1. Appellant concedes that respondent "was negligently misdirected by the conductor of the Grand Avenue car," but claims that "a passenger . . . with a ticket which affirmatively shows he has no right to transportation cannot insist on the conductor . . . accepting his explanation against the face of the ticket," and that when respondent refused either to pay a cash fare or voluntarily to leave the car, the employees were justified in using the force necessary to eject him. This contention must be sustained. Section 2188 of the Civil Code provides: "A passenger who refuses to pay his fare or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier. But this must be done with as little violence as possible, and at any usual stopping-place or near some dwelling-house." This section merely states the general rule which is thus expressed in 10 C. J. 730: [1] "A carrier has a right to adopt reasonable rules and regulations for the conduct, comfort, and protection of its passengers, and may enforce such rules or regulations by ejecting from its cars or premises one who wrongfully fails or refuses to comply therewith. . . . " (See, also, *Krueger* v. *Chicago etc. Ry. Co.*, 68 Minn. 445, [64 Am. St. Rep. 487, 71 N. W. 683, 684].)

In the case at bar, appellant offered in evidence "Bulletin No. 357, Notice to Conductors," which set forth certain of the regulations governing the acceptance of transfers; among these regulations was the rule under which the second conductor acted in refusing to accept respondent's transfer at Seventh and Broadway. An objection to the admission in evidence of this bulletin was sustained, but it was marked for identification, "Defendant's Exhibit 'A' " and is included in the record on appeal. Furthermore, W. G. Miller, the conductor who refused to accept respondent's transfer, and a witness for appellant, testified with reference to said transfer: "I told him I could not accept it; it was contrary to our rules to accept it only at First and Spring. . . . I

told him at the time I handed it back to him that the transfer was only good where it was punched, First and Spring.''

[2] Was this a reasonable regulation? We think it was. As was said in the note to *Shortsleeves* v. *Capital Traction Co.*, 8 L. R. A. (N. S.) 287, "the right of a street railway company to designate the place of transfer of passengers from one car to another in making a continuous trip for one fare clearly falls within the power which common carriers possess to make reasonable rules and regulations for the conduct of their business. Such a regulation is frequently necessary to prevent crowding at transfer points and to insure honesty in the use of transfers.'' (See, also, *Ex parte Lorenzen*, 128 Cal. 431, 435, [79 Am. St. Rep. 47, 50 L. R. A. 55, 61 Pac. 68]; *Percy* v. *Metropolitan St. Ry. Co.*, 58 Mo. App. 75.) The principle thus announced is clearly applicable to the facts herein. In a city the size of Los Angeles, thousands of transfers must be issued daily. If it were held that a transfer which shows on its face that it is "good only at First and Spring Streets,'' must be accepted for passage at Seventh and Broadway upon the oral statement of the passenger that he had been misdirected by another conductor, it would follow that any other condition or limitation appearing on the transfer could be disregarded upon the *ex parte* declaration of a passenger. If this were so, it would be incumbent on the conductor to decide then and there whether the representation of the passenger was correct and thus assume the risk of depriving his employer of a fare. To make the conductor the judge of the truth of the passenger's statements against the conditions printed on the transfer itself would tend to demoralize the orderly conduct of the business of the carrier, and give rise to disputes and breaches of the peace. We think the correct and more practicable rule is that the passenger must present the transfer only at the place or places thereon indicated and that the transfer is not valid for passage when presented elsewhere. It must be held, therefore, that the regulation under which respondent's transfer was rejected was a reasonable one, and that, under section 2188 of the Civil Code, if appellant's employees used reasonable force to eject respondent, their conduct was justified.

Several authorities are cited by respondent in support of his contention that where a passenger is ejected from a car on the ground that a tendered transfer erroneously issued by another conductor is defective the carrier is liable for the ejection. None of these authorities is applicable here. In *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668, [32 L. R. A. 193, 44 Pac. 320], the plaintiff had been wrongfully deprived of her ticket by the first conductor. She was required to change cars, and the second conductor refused to accept her explanation of the loss of her ticket. She voluntarily left the car and sued to recover damages, not for personal injuries received in an attempt to eject her, as in the instant case, but for the humiliation, delay, and inconvenience primarily caused by the negligence of the first conductor and aggravated by the breach by the second conductor of the defendant's original contract. Appellant concedes that "if the carrier has not furnished the passenger with the proper evidence of his right to transportation he has, notwithstanding, the right to such transportation, when he has acted in good faith and is without fault, and the carrier will be liable in damages if he is expelled from the car." This is the well-established rule, but, to repeat, the injuries for which respondent here seeks damages were the result of his attempt to resist an ejection and were not proximately caused by the appellant's negligence in misdirecting him as to the transfer point, [3] and our conclusion is that a passenger who does not comply with the reasonable regulations of the carrier as to the proper transfer point, even though such noncompliance be the result of a misdirection by another of appellant's employees, is not justified in resisting an attempt to eject him from the car in the event of his refusal to pay a cash fare.

*Clare* v. *Northwestern R. R. Co.*, 21 Cal. App. 214, [131 Pac. 323], may be distinguished on the same ground as the Sloane case.

In *Gorman* v. *Southern Pac. Co.*, 97 Cal. 1, [33 Am. St. Rep. 157, 31 Pac. 1112], the plaintiff had paid his fare, and, upon the conductor's demanding it again, refused to pay a second time. It appeared that the conductor thereupon ejected him, using more force than was reasonably necessary so to do. It was properly held there was no regulation with which plaintiff was bound to comply that a passenger must

pay his fare a second time, and recovery was allowed for damages resulting from the use by the conductor of excessive force.

2. Since appellant is not liable for the attempt of its employees to eject respondent, if such attempt was not accompanied by unnecessary force, we shall next consider whether there was unnecessary force. The theory upon which the court decided the case is made apparent from its ruling in excluding certain testimony of the witness Miller: "Q. Did you or the motorman use any more force than was necessary? The Court. I think objection would be good to that. *It is evident they didn't use enough."* (Italics ours.) It is plain that the court regarded it as immaterial whether or not the force used by the conductor and motorman was excessive, on the theory that the respondent was entitled to recover if *any* force was used. And the findings, after setting forth the misdirection by the first conductor, the respondent's boarding of the East First Street car, the refusal of the second conductor to accept the transfer, and respondent's explanation, state that the conductor seized the respondent by the arm, "pulled him from his seat to the rear platform of said car, and then attempted to eject him from said car"; that he was unsuccessful in removing respondent and called the motorman, whereupon "both conductor and said motorman seized plaintiff by the hands and coat collar and with great force pulled, twisted, and jerked plaintiff in the attempt to eject him from said car." It will be noted it is not found that any "unnecessary" or "excessive" force or violence was used. [4] Giving the findings the construction most favorable to respondent, it cannot be said that, either expressly or by implication, they indicate appellant's employees used more force than was reasonably necessary to remove respondent from the car. For it might be necessary to use "great" force in a justifiable attempt to remove respondent. In the absence of a finding of "excessive" or "unnecessary" force, or language of similar import, we must assume that it was because of its misconception of the law on the first point we have discussed, and not because appellant's employees used excessive force in attempting to eject respondent, that the court gave judgment in his favor.

[5] Inasmuch as the cause must be remanded for a new trial, we shall consider the assignment of error in the court's

refusal to allow Miller to answer the question already quoted. The testimony should have been admitted. Upon the issue of excessive force it was competent for appellant to controvert the evidence of respondent tending to show that the employees used such force. Respondent defends the ruling on the ground that the question called for a conclusion of the witness. But no objection whatever was interposed to the question by respondent. It is clear that the only ground upon which the proffered testimony was rejected was that appellant's employees did not use "enough" force to remove respondent from the car, and not that the question called for a conclusion of the witness. [6] In this state of the record respondent will not be heard to urge for the first time on appeal that the question was not properly framed.

Judgment reversed.

Shaw, J., Olney, J., Wilbur, J., Sloane, J., Lennon, J., and Angellotti, C. J., concurred.