[Civ. No. 3703. First Appellate District, Division Two.—February 26, 1921.]

## MARY K. GALLOWAY, Appellant, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Respondent.

[1] NEGLIGENCE—KILLING OF BOY BY STREET-CAR MOTORMAN—ACTION WITHIN SCOPE OF EMPLOYMENT—EVIDENCE—QUESTION FOR JURY.—In an action against a street railroad company for damages for the death of plaintiff's minor son alleged to have been caused by a blow on the head inflicted by defendant's motorman with the controller bar or gate handle of a street-car upon which deceased had been a passenger and from which he had alighted just prior to receiving the injury, the question whether the motorman was acting within the scope of his employment was one of fact for the jury, where from the facts in evidence the inference might well have been drawn that it was the purpose of the motorman to assist the conductor in ejecting from the car a passenger who had become boisterous and beyond control.

[2] STREET RAILROADS—EJECTMENT OF BOISTEROUS PASSENGER—LIABILITY OF COMPANY.—A conductor and a motorman of a street-car in ejecting from the car a passenger who has become boisterous and beyond control act within the scope of. their employment, and so long as they do not use unreasonable or unnecessary force the company is free from liability for the resulting injury.

[3] NEGLIGENCE—ACT OF MOTORMAN OF STREET-CAR—KILLING OF BOY—RELATIONSHIP OF PASSENGER—PROOF OF EXISTENCE UNNECESSARY.—In an action against a street railroad company for damages for the death of plaintiff's minor son alleged to have been caused by a blow on the head inflicted by defendant's motorman,

---

1. Liability of a carrier for the willful torts of servants to passenger, notes, 1 Ann. Cas. 617; 19 Ann. Cas. 618; 40 L. R. A. (N. S.) 999.

it was not a prerequisite to the right to recover that the passenger relation should have been established, and the plaintiff having made out a *prima facie* case of injury resulting either from the negligence of the motorman within the scope of his employment or from the wrongful acts committed by him as agent of the company, there was established a *prima facie* liability on the part of the company, and the burden was then placed upon it to show that the act was not committed in the transaction of the business of the agency within the meaning of section 2338 of the Civil Code.

[4] ID.—INJURY TO PASSENGER—NEGLIGENCE OF MOTORMAN IN SCOPE OF EMPLOYMENT—LIABILITY OF COMPANY—INSTRUCTION.—In such action, an instruction that if the injury occurred while the deceased was a passenger through the negligence or reckless act of the motorman while acting within the course of his employment the company was liable, was not in itself erroneous, since it correctly stated the law as to one phase of the case.

[5] ID.—TREATMENT OF PASSENGERS — ERRONEOUS INSTRUCTION. — An instruction in such action that while it is the duty of a motorman and conductor of a street-car to refrain from committing any wrongful assault upon persons riding upon the car as passengers, such duty ends when such persons cease to be passengers, was clearly erroneous, as it is the duty of everyone to refrain from committing any assault upon any person whether such person be a passenger or not.

[6] ID.—LIABILITY DEPENDENT UPON PASSENGER RELATION—ERRONEOUS INSTRUCTIONS.—In such action, instructions which tied the liability of defendant to a showing of a passenger relation of the deceased from which the jury must necessarily have drawn the conclusion that the court entertained the view that without such a showing plaintiff could not recover were prejudicially erroneous.

[7] ID.—DEGREE OF PROOF—ERRONEOUS INSTRUCTION.—An instruction that the evidence must satify the minds of the jurors to a moral certainty and by a preponderance of the whole evidence before a verdict could be rendered against the defendant, was erroneous, as it clearly required satisfaction beyond a reasonable doubt, which is not necessary in civil cases.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Reversed.

The facts are stated in the opinion of the court.

F. H. Dam for Appellant.

Wm. M. Cannon, Wm. M. Abbott and Kingsley Cannon for Respondent.

NOURSE, J.—Plaintiff appeals from a judgment after verdict in favor of defendant in an action for damages for the death of her minor son. Death was alleged to have been caused by a blow on the head inflicted by defendant's motorman with the controller bar or gate handle of a street-car upon which deceased had been a passenger, and from which he had alighted just prior to receiving the injury.

The facts in evidence, without substantial conflict, are that the deceased—a young boy of about eighteen years of age—with three other companions, was traveling upon a Valencia Street car, in the city and county of San Francisco, when an altercation arose between the conductor of the car and the deceased over the request of the latter for transfers, to which it is conceded he was lawfully entitled. As a result of the altercation blows were exchanged between the conductor and the deceased and the conductor gave the motorman an emergency signal to stop the car immediately after it had passed Twenty-third Street. The parties were then separated and the conductor gave the signal to go ahead. Thereafter the altercation was resumed and a passenger gave the emergency signal, whereupon the motorman brought the car to a stop about one hundred feet north of the intersection of Twenty-fourth Street. The motorman immediately opened his gate and, taking the gate handle, stepped down upon the street from the front platform and ran to the rear of the car to give aid to the conductor. At the same time the deceased left the car and was standing in the street when the motorman approached the rear step. The deceased took two or three steps toward the motorman, who thereupon struck him violently on the head with the gate handle, causing a concussion of the brain, which resulted in almost instant death.

The appeal is based upon alleged errors of law occurring at the trial and excepted to by appellant in the giving, modifying, and refusing of certain instructions. Appellant's principal contention is that the instructions given made the test of liability depend upon the question whether or not decedent was a passenger at the time of receiving his fatal injury, and that this was erroneous because he would be entitled to recover, even though the passenger relation had terminated, if his death was caused by a tortious act

51 Cal. App.—37

of respondent's motorman acting in the course and within the scope of his employment. Respondent concedes this principle and that the relationship of passenger and carrier is not *per se* determinative of the issue as to whether or not the tort complained of was committed within the scope of the employment. It argues, however, that appellant limited her cause of action to the passenger theory by alleging in her complaint that decedent was a passenger and that, therefore, she was not entitled to have the jury instructed on the question of respondent's liability for injuries to one not a passenger. The authorities cited by respondent to support this position hold that one may not plead one relation and prove another, but in each instance the complaint was based exclusively on the theory of the passenger relation, and it was neither alleged nor proved that the act was done in the course of, or within the scope of, employment, so that on failure of proof of the passenger relation no cause of action was stated. It is said in *Raming* v. *Metropolitan Street Ry. Co.*, 157 Mo. 477, 509, [57 S. W. 268, 273], cited by respondent: "If plaintiff was not a passenger, then the defendant company could only become liable by reason of the fact that the alleged acts of the gripman were within the scope of his duties. . . . *But there was no such allegation in the petition, and no evidence on this point.* This being the case, no recovery could be had on such ground, *absent such allegation and absent such evidence.*"

[1] In the instant case, if the allegation of the passenger relation is eliminated, the complaint still states a good cause of action for damages for a wanton assault. It is alleged with great care that the "motorman, then and there acting in the course and within the scope of his said employment as such motorman . . . negligently, wantonly, recklessly and tortiously struck the said Lucian A. Galloway upon the head with said controller bar." This allegation is supported by the uncontradicted evidence that during the altercation between the conductor and the deceased on the rear platform of the car the conductor gave the motorman the emergency signal of three bells and that the latter immediately brought the car to a stop. Having ascertained that the trouble was over, he started his car toward Twenty-fourth Street, when he again received the

emergency signal and was told by passengers that some-
thing was wrong on the rear of the car and that the con-
ductor needed his assistance. Acting upon the signal
given and urged by these passengers, he opened the front
gate, and, taking the gate handle in his right hand, stepped
out upon the street and ran to the rear of the car to give
what assistance was needed to the conductor. When he
arrived there both the deceased and his companion had left
the car, while the conductor was still standing in his posi-
tion on the rear platform.

From the facts in evidence the inference might well have
been drawn that it was the purpose of the motorman to
assist the conductor in ejecting from the car a passenger
who had become boisterous and beyond control. [2] In
carrying out this purpose both the conductor and the motor-
man would have been acting within the scope of their em-
ployment and so long as they did not use unreasonable or
unnecessary force the company would have been free from
liability for damage for the resulting injury. (*Wasserman
v. Los Angeles Ry. Corp.*, 184 Cal. 202, [193 Pac. 130].)
Whether the motorman was acting within the scope of his
employment was a question of fact for the jury to deter-
mine.

[3] It was not a prerequisite to the right to recover
that the passenger relation should be established. Ap-
pellant made out a *prima facie* case of injury resulting
either from the negligence of the motorman within the
scope of his employment or from the wrongful acts com-
mitted by him as agent for respondent in and as a part of
the transaction of respondent's business. There was thus
established a *prima facie* liability upon respondent within
the rule of *Otis Elevator Co. v. First Nat. Bank*, 163 Cal.
31, 39, [41 L. R. A. (N. S.) 529, 124 Pac. 704], and
*Johnson v. Monson*, 183 Cal. 149, [190 Pac. 635]. The
burden was then placed upon the respondent to show that
the act was not committed "in the transaction of the busi-
ness of the agency" within the meaning of section 2338 of
the Civil Code. (*Chamberlain v. California Edison Co.*, 167
Cal. 500, 505, 506, [140 Pac. 25]; *Barmore v. Vicksburg
etc. Ry. Co.*, 85 Miss. 426, [3 Ann. Cas. 594, 70 L. R. A.
627, 38 South. 210]; *Cleveland v. Newsom*, 45 Mich. 62,
[7 N. W. 222].)

The trial court at some stages of the proceedings took the view that there could be no recovery unless the injury resulted while appellant was a passenger on the car. This is shown by the modifications which were made in the instructions proposed by appellant and in the action of the trial court in denying a new trial "upon the sole ground that while the death of the decedent was caused by the act of the respondent's motorman, the relation of passenger and carrier did not exist between the respondent and the decedent at the time said motorman inflicted upon the decedent the fatal blow."

[4] Specific objection is made to the action of the trial court in modifying appellant's proposed instruction No. 6 by adding the words "while he was a passenger on the car." The instruction as modified, however, correctly stated the law as to one phase of the case. As the jury was thereby instructed that, if the injury occurred while the deceased was a passenger on the car through the negligence or reckless act of the motorman while acting in the course of his employment, then the employer was liable, it cannot be said that the instruction in itself was erroneous. [5] Objection is also made to instruction No. 28, which reads: "While it is the duty of a motorman and conductor of a street-car to refrain from committing any wrongful assault upon persons riding upon said car as passengers, such duty ends when such persons cease to be passengers." This instruction was clearly erroneous, as it is the duty of everyone, whether he is a motorman on the street-car or not, to refrain from committing any assault upon any person whether such person be a passenger or not.

Respondent, though not conceding any error in these instructions, argues that, taking them all together, the instructions fully and fairly presented the issues to the jury. Reference is made particularly to the following instruction: "If you find that before the car in question reached his destination the decedent, Galloway, and the conductor of said car became, and were, engaged in an affray on, or near, the rear of the car, and if you find that before, or in the course of, said affray the motorman of said car received the emergency bell, and if you find that the motorman was then informed of said affray and thereupon with the purpose and with the design of engaging in the

affray and assisting the conductor he stopped the car, and if you find that after stepping from the car he took in his hand the controller bar or gate bar of the car, and thereupon left his place in the front of the car and went to, or near, the rear of said car, in pursuance of his said purpose and design, and struck Galloway with the controller bar or gate bar a blow which caused his death, and if you further find that the affray in question at that time continued or threatened to continue, then the defendant is liable." This instruction, so far as it went, presented the law of the case to the jury in so far as the liability of the respondent attached irrespective of the passenger relation.

[6] But the injury was done by those instructions which tied the liability of respondent to a showing of a passenger relation of the deceased from which the jury must necessarily have drawn the conclusion that the trial court entertained the view that without such a showing appellant could not recover.

[7] Other and equally prejudicial instructions were those numbered 30 and 31. Number 30 reads in part as follows: "Before you can render a verdict against the defendant *the evidence must satisfy your minds to a moral certainty and by a preponderance of the whole evidence:* . . . Second, that in committing such act the motorman was acting within the scope of his employment by the defendant. . . . " Number 31 used similar language relating to the proof necessary to show that the blow was the proximate cause of the death of the deceased, the court saying: "If, therefore, the evidence upon this point is equally balanced or if it *does not satisfy your minds to a moral certainty and by a preponderance,* . . . your verdict must be in favor of the defendant."

It was not incumbent upon the appellant to satisfy the jury to a moral certainty *and* by a preponderance of evidence that the motorman was acting within the scope of his employment when he struck the fatal blow or that the blow was the proximate cause of the death of deceased. Sufficient evidence had been produced by appellant to warrant the inference that the motorman was so acting within the scope of his employment when the fatal blow was struck, and the burden of proving that he was not so

acting was cast upon the respondent. To instruct the jury, therefore, that the evidence must satisfy their minds to a moral certainty and by a preponderance was error, as it clearly required satisfaction beyond a reasonable doubt, which is not necessary in a case of this nature. (*People* v. *Miller,* 171 Cal. 649, 651, [154 Pac. 468]; *People* v. *Preciado,* 31 Cal. App. 519, 525, [160 Pac. 1090]; *Boa* v. *San Francisco-Oakland Terminal Rys.,* 182 Cal. 93, [187 Pac. 2].)

The rule as to the measure of proof required in civil cases as distinguished from the measure required in criminal cases is ably discussed in *Cooper* v. *Spring Valley Water Co.,* 16 Cal. App. 17, [116 Pac. 298]. That was an action for conversion of corporate stock where the plaintiff alleged and endeavored to prove that the certificates of stock had been stolen from his testator by one who transferred it to a bank and that the water company over plaintiff's protest had transferred the stock on its books. The trial court instructed the jury that "plaintiff must produce satisfactory evidence" to establish the theft of the stock; that "suspicion will not warrant a verdict of theft; it must be established by such positive proof of actual theft or circumstances as to preclude any other inference so as to convince the mind of a reasonable man. Innocence is always presumed, and the presumption cannot be overcome except by satisfactory proof to the contrary." (16 Cal. App. 21, [116 Pac. 300].)

In reversing the case, Mr. Justice Lennon, after quoting from subdivision 5 of section 2061 of the Code of Civil Procedure, providing that "in civil cases the affirmative must be proved, and when the evidence is contradictory the decision must be made according to the preponderance of evidence," said: "In other words 'the result should follow the preponderance of the evidence' (2 Wharton on Criminal Evidence, 1246), and this rule applies to all civil cases alike, even though the theory of the case involves, as it does here, an accusation of felony." And again (16 Cal. App. 22, [116 Pac. 301]): "The reason for the rule limiting the burden of a plaintiff's proof in such cases to a preponderance of evidence is founded largely 'in the importance of preserving the distinction between civil and criminal cases with the growth of the criminal

law. Almost every tortious act is by statute made indict-
able if done willfully or maliciously; and the courts should
be reluctant to adopt, in civil cases, the rules peculiar
to criminal law, lest wrongdoers be enabled to avoid civil
liability, as well as escape criminal responsibility, under
cover of the rules of criminal prosecution, the object of
which is punishment only.' (*Kane* v. *Hibernia Ins. Co.*,
39 N. J. L. 697, [23 Am. Rep. 239].)''

The rule of the Cooper case is supported by a long line
of authorities such as *New York & Brooklyn Ferry Co.* v.
*Moore*, 102 N. Y. 667, [6 N. E. 293]; *United States Exp.
Co.* v. *Jenkins*, 73 Wis. 471, [41 N. W. 957]; *State* v.
*Ellison*, 268 Mo. 239, [187 S. W. 23]; *Brothers* v. *Horne*,
140 Ga. 617, [79 S. E. 468]; *Brinser* v. *Fidelity Trust Co.*,
1 Boyce (Del.), 220, [75 Atl. 792]; and many others
which might be cited. Its application to the present case
is that the complaint alleged that the motorman, while
acting in the course and within the scope of his employ-
ment, wantonly, recklessly, and tortiously struck the fatal
blow. The effect of these allegations is to charge the lia-
bility of respondent to the criminal acts of its motorman
amounting to manslaughter as well as assault with a
deadly weapon. In such a case the above rule as to the
measure of proof required should control. As such a crime
could be proved for the purposes of this case by a mere
preponderance of the evidence, the jury might well have
drawn the inference that the act was committed within
the scope of the motorman's employment. To require the
appellant to prove that fact by satisfying the minds of
the jury to a moral certainty imposed upon the appellant
a burden greater than the law required.

Respondent's only defense of these instructions is that
they were cured by the further instruction that prepon-
derance was all that was required, that the error was
invited by appellant's requested instructions, and that they
were nonprejudicial. It is true that in instruction No.
30 the court concluded with the words: ''If any one of
these facts has not been proved by a preponderance of the
evidence your verdict must be in favor of the United
Railroads.'' But this language clearly does not remove
the harm done by the first portion of the instruction which

advised the jury that both satisfaction to a moral certainty *and* by a preponderance was necessary. Then in instruction No. 31 no attempt was made to cure the error.

The statement that the error was invited by appellant is not supported by the record. In instruction No. 4, requested by appellant, the expression "moral certainty" was used in this way: "Moral certainty only is required of plaintiff. Moral certainty is defined as that degree of proof which produces conviction in an unprejudiced mind." However, this language was followed immediately by the admonition that "the rule which applies in criminal cases that the guilt of the defendant must be established beyond a reasonable doubt has no application to this case. In other words, the plaintiff is not required to establish her case by more than a preponderance of the evidence. If, after weighing all the evidence in the case, the minds of the jurors shall be satisfied that the scales tip by ever so little in favor of the plaintiff, then the plaintiff has sustained her burden of proof and has established her case by a preponderance of the evidence." The court adopted that portion of the proposed instruction referring to moral certainty, but the language last quoted was stricken out and was not given to the jury in any other form. Instructions numbered 30 and 31 were given on the request of respondent.

That prejudice resulted from this error cannot be doubted. The court did not define what was meant by a preponderance of the evidence and did not at any time advise the jury that a preponderance of the evidence alone would be sufficient to justify a finding in favor of the party having the burden of proof. As that phase of the case most strongly relied upon by appellant depended upon the question whether the fatal blow had been struck by the motorman while acting within the scope of his employment, and as the burden of proving that he was not so acting had been cast upon the respondent, the instructions complained of were clearly prejudicial to appellant's case. "In such case it is impossible to determine which of the conflicting rules presented to them was followed by the jury and the error in any of the instructions must be.

deemed prejudicial." (*Rathbun* v. *White*, 157 Cal. 248, 253, [107 Pac. 309, 311].)

The judgment is reversed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 27, 1921.

All the Justices concurred.